In the Matter of the Judicial Settlement of the Account of
THOMAS ROGERS and WILLIAM CAULDWELL, as Trustees,
under the Last Will and Testament of JASON ROGERS,
Deceased.

THOMAS ROGERS and WILLIAM CAULDWELL, as Trustees, et al.,
Appellants; MARY J. WESTERFIELD et al., Respondents.

TESTAMENTARY TRUST FUND IN STOCK OF MANUFACTURING CORPORA-
TION IN PROCESS OF LIQUIDATION — SALE OF CORPORATE PROPERTY AND
DISTRIBUTION OF STOCK OF NEW CORPORATION AND OF CASH PROCEEDS —
CAPITAL AND PROFITS, AS BETWEEN LIFE TENANTS AND REMAINDERMEN.
Part of the capital of testamentary trusts, created by the testator for the
benefit of his children during their lives with remainders to their issue, con-
sisted of shares, owned by the testator at the time of his death, of the capital
stock of a manufacturing corporation, whose capital stock was $300,000, in
shares of $100 each. The corporation, having continued in business for sev-
eral years after the testator's death, paying large dividends and accumula-
ting property, sold its plant, together with its raw material and that in pro-
cess of manufacture, for $2,750,000, to be paid in stock of a new corporation,
whose capital stock was $3,000,000, in shares of $100 each. The stock of
the new company, obtained from the sale of the plant of the old company,
was divided among the stockholders of the old company in the proportion
of ten shares of the new stock for one share of the old. On the sale of its
plant, the old company ceased to do business and went into liquidation.
It remained possessed of accumulated property, consisting of cash on hand,
bills receivable, real estate, government bonds and railroad stocks, amount-
ing in value to $3,000,000. This property the officers of the corporation
proceeded to convert into money and distribute among the stockholders.
The first cash dividend made on the liquidation was $100 a share. *Held*,
as between the life tenants and the remaindermen, that the stock in the
new company received on the sale of the plant of the old company,
together with the first dividend declared after such sale of 100 per cent,
being the amount of capital stock of the old company, should be retained
by the trustees as capital, and that all of the other property of the cor-
poration was profits to which the life tenants were entitled.
   *Matter of Rogers*, 22 App. Div. 428, affirmed.

   (Argued October 25, 1899; decided November 28, 1899.)

   APPEAL by Jason Rogers and Jay S. Rogers, remaindermen,
by the trustees, and by infants interested in the proceeding,
from an order of the Appellate Division of the Supreme

Court in the second judicial department, entered December 6, 1897, affirming a decree of the Surrogate's Court of Westchester county.

The nature of the proceeding and the facts, so far as material, are stated in the opinion.

*Rastus S. Ransom* for trustees, appellants, and *Porte V. Ransom* for infants, appellants.   A division of the assets of a corporation which has ceased to do business and sold its plant and all its property, and is in the process of liquidation preparatory to a final dissolution, is a distribution of capital, and the distributions received by a trustee holding shares of stock become part of principal, and not income of the trust estate. (1 Morawetz on Priv. Corp. §§ 443, 447 ; *Gifford* v. *Thompson*, 115 Mass. 478 ; *Richardson* v. *Richardson*, 45 Me. 570 ; *Wheeler* v. *Perry*, 18 N. H. 304.)  If a corporation has used the whole or part of its earnings or profits to extend its business, increase and renew its plant and business operations, or purchase securities, land or other property, it has thereby capitalized or fused into capital such earnings or profits, and they will continue to be capital when the corporation goes into liquidation preparatory to dissolution and distributes such accumulations.    (*Irving* v. *Houston*, 4 Paton Sc. App. 521; *Matter of Barton*, L. R. [5 Eq.] 238 ; *Bouche* v. *Sproule*, L. R. [12 App. Cas.] 385 ; *Spooner* v. *Phillips*, 62 Conn. 62; *Matter of Smith*, 140 Penn. St. 344; *Vinton's Appeal*, 99 Penn. St. 434; *Davis* v. *Jackson*, 25 N. E. Rep. 21; *Matter of Brown*, 14 R. I. 371; *Minot* v. *Paine*, 99 Mass. 101; *Gibbons* v. *Mahon*, 136 U. S. 549.)  If a corporation makes a sale of all its real and personal property, including its plant, contracts, good will and business, and distributes the proceeds among its stockholders, such distributions are held to be capital.   (*Wheeler* v. *Perry*, 18 N. H. 304 ; *Heard* v. *Eldridge*, 109 Mass. 258 ; *Clarkson* v. *Clarkson*, 18 Barb. 646 ; *Vinton's Appeal*, 99 Penn. St. 434 ; *Wheeler* v. *Perry*, 18 N. H. 307.)   The method and terms by which the officers of a corporation exercise their discretion-

ary power with respect to the distribution or retention of the profits or earnings of a corporation determine the destination of such distribution, whether to the life tenant or remainderman. In a word, what the company says is income shall be income, and what it says is capital shall be capital. (*Matter of Kernochan*, 104 N. Y. 628; *Greene* v. *Smith*, 17 R. I. 28; *Rand* v. *Hubbell*, 115 Mass. 416, 474.) The intention of the testator must control the disposition of the funds in question as principal. (*Findlay* v. *Kings*, 3 Pet. 377; *Matter of James*, 146 N. Y. 96.)

*Hammond Odell* for remaindermen, appellants. The Rogers Locomotive and Machine Works was in process of liquidation. A division of its assets was a division of its capital, and the trustees properly credited to the principal account the amounts received by them pursuant to such division. (*Gifford* v. *Thompson*, 115 Mass. 478; *Wheeler* v. *Perry*, 18 N. H. 305; *McLouth* v. *Hunt*, 154 N. Y. 179.) The accumulated earnings of the Rogers Locomotive and Machine Works had been capitalized; they were so capitalized at the time of the sale to the new corporation, and the interest therein represented by each share of the stock of the old company was capital. (*Gibbons* v. *Mahon*, 136 U. S. 549; *Minot* v. *Paine*, 99 Mass. 107; *Christensen* v. *Eno*, 106 N. Y. 100.)

*Hamilton Wallis* for respondents. The intention of the testator was that his daughter should receive the entire earnings of the shares of the locomotive works. (*Gibbons* v. *Mahon*, 136 U. S. 549; *Minot* v. *Paine*, 99 Mass. 101; *Mills* v. *Mills*, 7 Sim. 500; *Price* v. *Anderson*, 15 Sim. 477; *McLaren* v. *Stainton*, 3 DeG., F. & J. 215; *Bouche* v. *Sproule*, L. R. [12 App. Cas.] 385.) The testator left it to the corporation to determine what and how much of its property should be capital and what and how much should be income. The corporation decided that its capital should be $300,000; all the rest is income. (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 49; *Ry. Co.* v. *Allerton*, 18 Wall. 235; *Minot* v. *Paine*, 99 Mass. 112; *Barclay* v. *Wain-*

*wright*, 14 Ves. 74; *Bouche* v. *Sproule*, L. R. [12 App. Cas.]
393; *McLouth* v. *Hunt*, 154 N. Y. 198; *Lord* v. *Brooks*, 52
N. H. 72.) All of the earnings belonged to the life bene-
ficiaries. (*Barclay* v. *Wainwright*, 14 Ves. 66; *McLaren* v.
*Stainton*, 3 DeG., F. & J. 202; *Bouche* v. *Sproule*, L. R.
[12 App. Cas.] 385; *Harvard College* v. *Amory*, 9 Pick.
446; *Balch* v. *Hallett*, 10 Gray, 404; *Davis* v. *Jackson*, 25
N. E. Rep. 21; *Richardson* v. *Richardson*, 75 Me. 570;
*Lord* v. *Brooks*, 52 N. H. 72; *Doren* v. *Olden*, 4 C. E.
Green, 176; *Matter of Woodruff*, 1 Tuck. 61.)

HAIGHT, J. This proceeding was for an accounting before
the surrogate by trustees. The facts are without substantial
dispute, and are very clearly stated in the findings of the sur-
rogate to which we refer for the details. For the purpose of
presenting the question which we are called upon to review,
they may be briefly stated as follows: Jason Rogers died in
the town of Westchester on the 25th day of August, 1868,
leaving a last will and testament in which he created three
separate trusts for the benefit of his children during their
lives with remainders to their issue. He named trustees, and
of the property devised to them, constituting a part of the
capital of each trust, were shares of the capital stock of the
Rogers Locomotive and Machine Works. That corporation
was organized under the laws of New Jersey, and carried on
its business of manufacturing locomotives and machinery at
Paterson, New Jersey. Its capital stock was $300,000, repre-
sented by three thousand shares of the par value of $100
each. At the time of the decease of the testator the stock of
the corporation owned by him was appraised at the sum of
$125 per share. The corporation continued business until
1893, paying dividends each year, at first of 10% and later on
of 20%. At that time it sold its plant, consisting of lands,
buildings, water power, machinery, tools and fixtures, together
with its raw material and that in the process of manufacture,
for the sum of $2,750,000 to be paid in the stock of a new
corporation known as the Rogers Locomotive Company, whose

capital stock was $3,000,000, represented by share stock of the par value of $100 each. The stock of the new company obtained from the sale of the plant of the old company, was divided among the stockholders of the old company in the proportion of ten shares of the new stock for one share of the old. After making this sale the Rogers Locomotive and Machine Works remained possessed of other property which it had accumulated consisting of cash on hand, bills receivable, real estate in some of the western states, government bonds and stock in railroad corporations amounting in value in round numbers to $3,000,000. This property the officers of the corporation proceeded to convert into money and distribute among the stockholders.

The question presented for our review arises out of the conflicting claims of the life tenants and the remaindermen. It is claimed, on behalf of the life tenants, that the $3,000,000 of property accumulated outside of the plant is profits, and that they each should be given their proportionate share thereof. While on the part of the remaindermen it is contended that this accumulation is a part of the capital of the corporation, and that the trustees should retain their distributive share thereof as capital of the trust for their benefit. The surrogate held that the stock in the new company received on the sale of the plant of the old company, together with the first dividend declared after such sale of 100%, being the amount of the capital stock of the old company, should be retained by the trustees as capital, and that all of the other property of the corporation was profits to which the life tenants were entitled.

Our attention has been called to many cases, both English and American, bearing, to some extent, upon the subject, but they furnish but little aid in the determination of the question presented under the peculiar facts of this case. An argument is made which has the sanction of some of the authorities, to the effect that all of the assets of a corporation are deemed capital until a dividend is declared. We may concede that assets are ordinarily so treated in going concerns,

but the rule has its limitations. The directors must act in good faith. If they fail to do so, and it clearly appears that they have accumulated earnings not required in the prosecution of the business, which they withhold from the stockholders for illegitimate purposes, a court of equity may interfere and compel a distribution of such earnings.

In this case we have a manufacturing corporation that commenced with a comparatively small capital and grew to an enormous concern. It not only paid large annual dividends, but it accumulated property not used in its business of great value. It continued business until 1893, when the stockholders, at a meeting, authorized the directors to sell the business and distribute the assets. After effecting a sale of the company's plant it ceased to do business and went into liquidation. After such sale it could no longer earn profits for distribution, and the directors were no longer vested with any discretion with reference to the conduct of the business or judgment as to the amount of assets that should be retained and employed as a working capital. They, therefore, had no power to determine questions arising between remaindermen and life tenants. That power devolved upon the courts. Their only remaining duty was to convert the assets into money and to divide it among the stockholders.

What then is capital and what is profits? In a manufacturing business a plant is of first importance, and as the business increases an enlargement thereof, with the necessary tools, fixtures and machinery, is one of the things to which the earnings of the company may properly be devoted. This must be deemed to be fairly within the contemplation of the testator in creating the trusts with the capital stock of this company. After the plant there arises a necessity for raw material and labor to manufacture it. This requires what is usually termed a working capital, and it, of necessity, varies in amount depending upon the magnitude of the business. It must, therefore, also have been within the contemplation of the testator that a reasonable amount would be retained by the directors for this purpose.

15

The sale of the plant, as we have seen, included the stock of raw material on hand and that in the process of manufacture, and we must assume that the sum obtained from such sale included so much of the working capital as was necessary for the procurement of raw material. It does not, however, include the working capital necessary for the procurement of the labor to continue the business until the manufactured articles could be marketed and realized upon. The evidence fails to inform us as to the amount that was required to be retained by the directors for this purpose and we are, consequently, left without the means to determine that fact. The appellants claim that all of the assets were necessary, but this we cannot admit. It is very clear that the investment in government bonds, railroad stocks, and lands in the western states was not capital employed in the business of the corporation, and, consequently, was not necessary as a working capital.

As we have seen, the surrogate held that all that was received upon the sale of the plant should be retained by the trustees as capital, and this included that which had been paid out for raw material. He also held that the first cash dividend made on the liquidation of $100 per share should also be retained by them as capital. It may be that the company required a larger working capital than this would furnish, in the conduct of its business. But in the absence of evidence showing the amount that was necessary we cannot assume that more was required than the par value of its entire capital stock.

Something has been said in the testimony with reference to credits given upon sales made by the corporation. We can readily see that the corporation in furnishing a new railroad with locomotives may be asked to give long credit, but it is not apparent how the giving of credit upon sales made should affect the rights of the life tenants further than to postpone the time of the distribution of the profits.

We incline to the view that substantial justice has been done the parties by the order appealed from and that it should be affirmed, with costs.

All concur.

Order affirmed.