an official bond or undertaking required by law is not to be affected in any degree by any failure, irregularity, or omission either as to time, form, amount, execution, or approval. Assuming the provision of the plaintiff's charter creating a lien upon the real estate of the officer and of his bondsmen to be a valid one, the subjection to such lien would seem to be a part of the liability incurred. It was said in Village of Olean v. King, 116 N. Y. 355, 362, 22 N. E. 559: "The sureties must be deemed to have executed the bond with knowledge of, and to have contracted with reference to, this provision of the charter." The subjection to such lien having, therefore, been voluntarily assumed, the many cases cited by the appellants have no application, wherein incumbrances upon property were sought to be created by others without the consent of the owners, and wherein, of course, it was held that the strictest compliance with every statutory provision was an essential prerequisite.

It cannot be held upon this appeal, if at all, that the provision of the charter creating a lien offended any constitutional right. The doctrine of "due process of law" certainly cannot be invoked on behalf of those who have voluntarily executed the bond, and the subsequent incumbrancers may be bound in this instance by actual notice of the plaintiff's lien; assuming that constructive notice by the filing in a public office of the document creating a lien, which has long been a settled and approved practice, is to be deemed insufficient. The date when the lien became effective, and its amount and territorial scope and effect, are not now before the court, although it is conceded by the respondent that the lien cannot be lawfully extended so as to take effect beyond the city limits. But whatever may be the ultimate decision upon the constitutional question, it must be assumed that the claims of the defendants, other than the principal and his sureties on the bond, are subordinate to the lien of the plaintiff, as alleged in the complaint, until the facts shall have been fully disclosed upon a trial.

The order and interlocutory judgment should be affirmed.

Interlocutory judgment affirmed, with costs. All concur.

---

(44 Misc. Rep. 318.)

TUTTLE v. FIRST NAT. BANK OF PATERSON et al.

(Supreme Court, Special Term, New York County. July, 1904.)

1. TRUST ESTATE—PURCHASE FROM LIFE TENANT—RIGHTS ACQUIRED.

Testator created by his will in 1857 a testamentary trust to sell his real estate and invest and reinvest the proceeds in bank stock, and to pay to one of his three daughters one-third of the income during her life, with provisions as to the disposal of her share on her death. The trustee purchased, in 1884, stock in a domestic bank, thereby acquiring in all its assets an interest in proportion to the stock held by him. Through a subsequent trustee the life interest of the life tenant was acquired by a foreign bank, and in 1903, on the liquidation of the domestic bank and redemption of the stock, the trustee received a fund representing his interest. *Held*, when the fund became available for distribution the foreign bank was not

entitled to the whole of it, but only pro rata to the undivided profit earned between 1884 and 1903, and to the income of the remainder of the fund during the life of the life tenant.

Action by Seth M. Tuttle, substituted trustee under deed of William H. lmlay to Chester Adams, against the First National Bank of Paterson, N. J., and others, for an accounting. Judgment for plaintiff.

Wells & Snedeker, for plaintiff.

Van Ingen, Seibert & Paddock, for defendant First National Bank of Paterson.

SCOTT, J. This is an action for an accounting by the plaintiff, Seth M. Tuttle, as substituted trustee, concerning a fund of $4,575, being the distributive share set apart upon the dissolution of the National Broadway Bank for 61 shares of stock in the bank standing in his name as trustee, and to determine the respective rights of the parties herein to such fund.

The trust under consideration was created in 1857 by a deed from William H. Imlay to Chester Adams, both of the city of Hartford, Conn., the subject-matter of which was originally certain lands in the state of Michigan. By the terms of the trust the trustee was directed to sell the lands and invest the proceeds "in good bank stocks in his own name as trustee, and to sell said stocks and invest the proceeds thereof in other good bank stocks in his own name as trustee, from time to time, and as often as said trustee may deem best," and to pay over "the rents, issues, dividends, income, and profits of said lands and stocks, and all investments and reinvestments of the proceeds of the sale thereof," to the three daughters of the creator of the trust, Georgiana, Isabella, and Alice, for their lives, with directions for the disposition of the principal upon the death of each. Georgiana is the only daughter now living, and is a party to this action. Out of the proceeds of the sale of the Michigan lands George M. Bartholomew, the successor trustee to Chester Adams, purchased in 1884 the 61 shares of stock in the national bank above referred to. Bartholomew afterward resigned as trustee, and thereupon Philo P. Hotchkiss, the husband of the defendant Georgiana I. Hotchkiss, was appointed his successor by an order of the Supreme Court of New York, entered in Kings county. In the course of the administration of the trust by Hotchkiss he pledged the stock in the National Broadway Bank with this defendant the First National Bank of Paterson as security for a loan made by it for the benefit of a business carried on by his wife, the defendant Georgiana I. Hotchkiss. In a suit heretofore brought by the First National Bank of Paterson against the National Broadway Bank and the plaintiff herein to acquire title to this stock the Court of Appeals decided that this defendant had lawfully acquired the life interest of Georgiana I. Hotchkiss in the same. The opinion of the court is reported in 156 N. Y. 459, 51 N. E. 398, 42 L. R. A. 139. A reference to this decision renders unnecessary a more detailed statement of the facts out of which such suit arose. In April, 1903, the National Broadway Bank went into dissolution under the laws of the United States, and thereupon sold all its assets to the Mercantile National Bank, and went out of business. At the time of going into liquidation the National Broadway Bank had

a considerable amount of surplus and undivided profits which it had accumulated for a period prior to its dissolution. To the fund of $4,575 received by the plaintiff trustee upon such dissolution this defendant the First National ·Bank of Paterson now makes claim to a portion thereof equal.to a pro rata share of the surplus and undivided profits which had accumulated up to the time of the bank's dissolution.

The plaintiff, on his part, insists that the whole proceeds of the redemption of the stock should be paid to him. The decision of the Court of Appeals above referred to amounted to a determination that the defendant bank had become vested with the whole of Georgiana Hotchkiss' interest in the stock. That the judgment only ordered the dividends thereafter declared to be paid over to the bank did not lessen the effect of this adjudication. The only practical question then before the court was as to the application of future dividends, but the decision applies equally to profits earned upon the investment of the trust fund, although accumulated by the Broadway Bank, and not declared by way of dividends. The question to be decided, then, is as to how much of the money paid for the shares upon liquidation belonged to Georgiana Hotchkiss. ·In determining this question I do not deem the price at which the shares were purchased as material, and, indeed, the evidence upon that point is far from precise. Properly speaking, the shares of stock were not in themselves property, but were merely evidence of the interest or ownership of the holder in the assets of the bank. Thus, when the trustee purchased the 61 shares of Broadway National Bank stock, he thereby acquired a property interest in that proportion of the property and assets of the bank which was represented by the shares bought. It was shown by a report made by the officers of the bank in compliance with the national banking act that on December 20, 1884, the assets of the bank consisted of $1,000,000 surplus and $518,876.26 of undivided profits. In investing the trust fund in the bank stock the trustee acquired therefor a proportionate interest in and ownership of this capital, surplus, and undivided profits, and these taken together constituted the available working capital which was thereafter to earn profits and resultant dividends. From the time of the investment Mrs. Hotchkiss was entitled to receive all of the earnings or profits realized upon the capital, but was entitled to receive no part of the principal. The Broadway Bank has made considerable profit since 1884, a portion of which has been declared as dividends. These the defendant bank has received. It appears, however, that at the time of its liquidation, while the capital and surplus of the Broadway Bank had remained as they had been in 1884, the undivided profits had increased by $383,510.40. This sum represents, as accurately as may be determined from the evidence, the earnings and profits of the bank accumulated since the trustee purchased the stock, in addition to the earnings and profits which had been distributed in dividends. The proportion of these increased but undistributed earnings which was represented by 61 shares of stock belonged to Mrs. Hotchkiss, and while she, or her assignee, could not actually receive these profits before liquidation, the amount is now available. Matter of Rogers, 161 N. Y. 108, 55 N. E. 393. The claim of the defendant bank to the whole sum representing capital and surplus is untenable, because to allow it would be to turn

over to it a considerable portion of the capital of the trust fund, for, as has been said, the purchase of the shares in 1884 amounted to an investment in the assets and property of the bank as they then were, whether called capital, surplus, or undivided profits. The sole right of the life tenant was to the profits derived from that investment, and those profits are represented by the increase in the undivided profits, in addition to the dividends declared and paid. The amount of the increased profits belonging to the life tenant should be estimated from the date of the purchase by the trustee, rather than from the date that the defendant bank acquired the life tenants' interest, because at the time of such acquisition the profits earned by the investment since the date of the purchase by the trustee belonged to the life tenant. A computation shows that the undivided profits earned and accumulated from the time the trustee purchased the stock down to the time of the liquidation amounted to $9.5877 per share, or $584.45 for the 61 shares held by the trustee. The defendant bank, as successor in interest of Georgiana Hotchkiss, is therefore entitled to receive this sum out of the amount paid to the trustee upon the liquidation of the Broadway Bank and the retirement of its share stock. Whatever remains in the trustee's hands should be reinvested in good bank stock, as the creator of the trust directed, and the income or dividends realized thereon should be paid to the First National Bank of Paterson during Mrs. Hotchkiss' lifetime. The trustee is, I think, entitled only to commissions upon so much as is paid over to the defendant bank under the decree to be entered in this action. The dividends declared and heretofore paid did not pass through his hands, but were paid directly to the Paterson Bank by the Broadway Bank. It appears that there was a real and irreconcilable difference between the parties as to how the money should be divided. Neither has substantiated its entire claim. The plaintiff and the defendant bank should have their taxable costs, and the plaintiff should have in addition an extra allowance of $175, and the defendant bank an extra allowance of $25; the costs and allowances to be paid out of the fund now in court, the sum to be retained by the trustee, and that to be paid to the defendant bank being thereby diminished pro rata.

Judgment accordingly.