ALFORD R. HAZZARD, Plaintiff, v. WILLIAM E. PHILIPS and RICHARD DE MILL BROWN, as Surviving Trustees under the Ninth Paragraph of the Will of WILLIAM H. HAZZARD, Deceased, Defendants.

(*Supreme Court, Appellate Division, Second Department, June 2, 1916.*)

WILL—BEQUEST OF NET INCOME OF TRUST ESTATE—DISTRIBUTION OF STOCK TO TESTAMENTARY TRUSTEES PURSUANT TO FEDERAL DECISION—WHEN STOCK DISTRIBUTED SHOULD BE TREATED AS INCOME RATHER THAN AS ADDITION TO CAPITAL—DISTRIBUTION OF STOCK OF SUBSIDIARY COMPANIES BY STANDARD OIL COMPANY.

Where a will directs the payment of the net income of a trust to a beneficiary until he shall attain the age of thirty years, and before the happening of that event the Standard Oil Company distributed to the testamentary trustees as holders of the stock the stock of certain subsidiary corporations pursuant to a decree of the Federal courts determining that the oil company could not continue to hold said stocks without violating the Federal statutes, the life beneficiary is entitled to the distributed stock as income and it cannot be retained by the trustees as capital, if such dividend was paid from the accumulated earnings of the

company, and the assignment thereof to the beneficiary will not entrench upon the capital of the trust fund as received from the testator.

The above rule holds where the stock distributed by the Standard Oil Company was the stock of certain pipe lines, which were constructed after the testamentary trust was created and the stock represents surplus profits of said companies accumulated after the creation of the trust.

The contention of the testamentary trustees that the period of the accumulation of income by the corporation whose stock was distributed began when the enforced distribution of the stock was actually made, rather than from the time when the testamentary trust was created, is untenable.

As the Federal decision determined that the pipe lines did not lawfully constitute a part of the working plant of the companies subsidiary to the Standard Oil Company and that they could not lawfully conduct a pipe line business, and that in equity the properties belong to the stockholders, it cannot be contended that the stock of the pipe line companies distributed was part of the working plant of the oil companies which held said stock.

Where the oil companies after the Federal decision transferred properties to newly-organized pipe line companies in return for their respective stock, which was distributed to the testamentary trustees, it cannot be contended that such transfers depleted the surplus of the old companies, it being presumed that the stock was worth the capitaliaztion of the new companies and no more.

Although one of the oil companies may have constructed its pipe lines prior to the creation of the testamentary trust, where it subsequently transferred those properties to a newly-incorporated pipe line company in exchange for its stock, which it distributed to the trustees, the stock distributed may be considered as part of the surplus of the old company

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure

G. A. McLaughlin (William B. Carswell with him on the brief), for the plaintiff.

Henry A. Ingraham (George G. Reynolds with him on the brief), for the defendants.

MILLS, J.— The following are the material facts:

On January 24, 1904, William H. Hazzard died leaving

a last will and testament, which was probated by the Surrogate's Court of Kings county March 25, 1904. By that will he left the residue of his estate to trustees therein named, who now are the defendants, in trust, to pay over the net income to his son, the plaintiff herein, from the death of his widow, who is now deceased, until the son shall become thirty years of age, which event has not yet occurred, the son being now twenty-four years of age, and having been entitled, at least during the year 1915, to the full income. A part of such trust estate was thirty shares of the stock of the Standard Oil Company of New Jersey. In consequence of the decision of the United States Supreme Court in 1911, in the case of Standard Oil Co. v. United States (221 U. S. 1), that company distributed among its stockholders the stock which it held in certain subsidiary companies owned by it, including the Ohio Oil Company and the Prairie Oil and Gas Company; and the defendants, as such trustees, received in that distribution eighteen and a fraction shares of the stock of the said Ohio Oil Company and five and a fraction shares of the stock of the said Prairie Oil and Gas Company. The said Ohio Oil Company at that time had certain pipe line properties, which its management, in December, 1914, became convinced, by the decision of said court in what is known as The Pipe Line Cases (234 U. S. 548), it could not hold without violating the Federal statutes, and, therefore, took proceedings by which said company transferred such property to a newly-organized corporation known as the Illinois Pipe Line Company, and received from such new company therefor its entire capital stock of $20,000,000; and by vote of its stockholders the said Ohio Company distributed said stock of such new company among its stockholders *pro rata*, and in such distribution the defendants, as such trustees, about February 1, 1915, received and still held six and a fraction shares of the stock of said new company, the Illinois Pipe Line Company.

The said Prairie Oil and Gas Company also held and oper-
ated certain pipe lines, and at the same time and for the same
reason similar proceedings were taken by its stockholders and
management, which resulted, about March, 1915, in defend-
ants, as such trustees, receiving in like manner eight and a
fraction shares of the stock of the newly-organized Prairie
Pipe Line Company. The said pipe lines of the said Ohio Com-
pany were constructed in 1906 and 1907, and no part of those
properties existed in 1904, when the trust was created. The
surplus of said Ohio Company was as follows:

| | |
|---|---:|
| December 31, 1903...................... | $8,529,495 15 |
| December 31, 1911...................... | 29,056,441 64 |
| At the date of the said transfer to the said | |
| Illinois Company ..................... | 68,849,427 49 |

Since the creation of the trust no other extraordinary divi-
dend, in cash or stock, was made by the Ohio Company, and
no part of such surplus at any time represented increased
value of real estate, plant investment, or securities.

The pipe lines of the Prairie Oil and Gas Company were con-
structed between 1901 and 1915, but the statement does not
give, upon this point, any more definite information. The
surplus of the said Prairie Oil and Gas Company was:

| | |
|---|---:|
| December 31, 1903...................... | Nothing. |
| December 31, 1904...................... | $684,751 46 |
| December 31, 1911...................... | 18,915,175 85 |
| When said company transferred its pipe line | |
| properties as aforesaid................. | 57,857,631 95 |

And the same things were true as to the character of such
surplus and as to there having been no previous extraordinary
dividends in cash or stock as above noted respecting the Ohio
Company.

The plaintiff here claims that, as the beneficiary of said trust entitled to the net income thereof, he is now entitled to both said allotments of stock in the said new pipe line companies, which were distributed to and received by the said defendants as such trustees in the early part of 1915, as above stated; while the defendants claim that they are entitled to hold both said allotments as parts of the principal or corpus of said trust fund; and the submission asks this court to decide that question.

The latest and as well a definite expression of the Court of Appeals upon the subject of the respective rights of such a life beneficiary and of such trustees to extraordinary dividends in cash or stock declared upon the stock belonging to the trust fund is to be found in Matter of Osborne (209 N. Y. 450). The rule there laid down is summarized in the prevailing opinion, at page 477, in the following words: " Extraordinary dividends, payable from the accumulated earnings of the company, whether payable in cash or stock, belong to the life beneficiary, unless they entrench in whole or in part upon the capital of the trust fund as received from the testator or maker of the trust or invested in the stock, in which case such extraordinary dividends should be returned to the trust fund or apportioned between the trust fund and the life beneficiary in such a way as to preserve the integrity of the trust fund."

From the application of this rule to the problem presented by the facts as to the stock of the Illinois Pipe Line Company, it seems to me clear that that stock should be regarded as income which has been earned and accumulated since the creation of the trust. The pipe lines involved were wholly constructed after January 24, 1904, when the trust was created. At the beginning of that year the Ohio Oil Company had a surplus of more than $8,000,000, and upon that date when it transferred its pipe lines to the new, the Illinois Pipe Line Company, it had a surplus of $68,000,000 plus, and after such transfer it had remaining a surplus of $48,000,000 plus. It

had before declared no extraordinary dividend, and no part of
such surplus represented increased value of real estate, plant,
investment or securities. In other words, during the life of
the trust the surplus of the Ohio Oil Company had increased
over $30,000,000, aside from the pipe line properties or the
stock of the new company which now represents those proper-
ties, and with that stock such increase was more than
$50,000,000. Therefore, such increase of surplus must repre-
sent profits of the company accumulated during such period.
(Matter of Rogers, 22 App. Div. 428, 438; affd., 161 N. Y.
108.)

The objections to this conclusion presented by the defendants'
counsel seem to me not to be well taken. In the first place he
contends that the test of said rule should be applied upon the
theory that the period for the accumulation of income should,
upon the facts, be treated as beginning with the year 1911,
when the enforced distribution of the stocks of the subsidiary
companies, including the said Ohio Oil Company and the Prai-
rie Oil and Gas Company, was made. I do not agree with
that view. It seems to me that the true way to look at the
matter is that the United States court decided in effect that
the Standard Oil Company could not lawfully hold stock in
the said subsidiary companies, but that, in equity, such stocks
belonged to the stockholders of the Standard *pro rata* and must
be distributed among them accordingly, or at least might be
so distributed. After that distribution was made, the stock-
holders of the Standard held their subsidiary company stocks
just the same as they before had held their Standard stock. If
any such subsidiary company had any accumulated surplus, and
should at any subsequent period attempt to divide it, or any
part of it, among its stockholders, the question of the respective
rights of such a life beneficiary and such trustees to the sur-
plus so distributed would have to be decided precisely as
though such surplus had remained with the Standard, and

then, at the same time, was distributed by it. I conclude that the date of the beginning of accumulation in the test here is January 24, 1904, the creation of the trust, and not 1911, the distribution of the subsidiary stocks.

The defendants further contend that the stocks of the new pipe line companies, so received by them as trustees, should be regarded as a part of the working plant of the Ohio Oil Company and of the Prairie Oil and Gas Company, and as thereby enhancing the value of the stock of those latter companies. I do not so view the matter. The effect of the decision of the United States court is that such pipe lines did not represent or constitute lawfully a part of the working plant of either of those old companies, as they could not lawfully conduct such a pipe line carrying business, but that in equity such properties belonged *pro rata* to the stockholders of the old companies and must be disposed of by those companies.

Doubtless they could have sold such property for cash; and, had they done so and then divided such cash among their stockholders, such dividend would have been subject to the application of the above-stated rule in Matter of Osborne (209 N. Y. 450). I think that the situation is no different because those old companies sold those properties for stock and then divided such stock. Such stock of the new companies, so distributed, appears to me to be subject to the application of the same rule. The situation seems to me to be precisely the same as that in Matter of Rogers (*supra*). The Court of Appeals in that case said: "It is very clear that the investment in government bonds, railroad stocks, and lands in the western States was not capital employed in the business of the corporation, and, consequently, was not necessary as a working capital." (161 N. Y. 114.)

In like manner, it seems quite clear here that the investment by those old companies in the pipe lines, which it could not lawfully employ in its business, " was not capital employed in

the business of the corporation, and, consequently, was not necessary as a working capital." (161 N. Y. 114.)

As to the contention further made by defendants' counsel, that the facts stated are not sufficient to warrant the conclusion that the pipe line properties so transferred did not exceed the entire surplus of the old corporation in each case accumulated during the life of the trust fund, I think that the presumption is that the properties transferred to the newly-organized pipe line companies, in return for their respective stocks, were worth respectively the capitalization of such new companies and no more, and, therefore, that we should hold that those transfers depleted the surplus of each of the old companies only by the amount of such new stock respectively. The figures hereinbefore given at different times indicate to my mind clearly that such surplus, to an amount far exceeding the distribution made by means of the stocks of the new pipe line companies, represented earnings made and accumulated during the life of the trust.

Moreover, I can see no reason why the Osborne matter rule, above stated, should not apply to the case of a practically enforced distribution as well as to one really voluntarily made. Here the distribution came because the stockholders had come to recognize that their directors had invested a part of their surplus earnings in pipe lines, which it was unlawful for their corporations to hold or operate.

The situation as to the stock of the Prairie Pipe Line Company differs somewhat from that of the stock of the Illinois Pipe Line Company in this, that the pipe lines of the Prairie Oil and Gas Company, which were transferred by it to the Prairie Pipe Line Company, were constructed by the Prairie Oil and Gas Company between 1901 and 1915, and may, for aught that the statement declares, have been wholly acquired prior to the formation of this trust. Still it seems to me that the situation in March, 1915, when the distribution of the stock

of the Prairie Pipe Line Company was made, was such that it was competent for the stockholders of the Prairie Oil and Gas Company to treat the stock of the other, the new company, as a part of the surplus of the old company and to distribtute it as such.  When the trust was created January 24, 1904, the Prairie Oil and Gas Company had no surplus at all, but in fact had a deficit; and when the distribution of the stock of the Prairie Pipe Line Company was made it had more than $57,000,000 surplus, or, aside from the stock of the Prairie Pipe Line Company, more than $30,000,000 of surplus.  It would seem plain that the proceeds of such sale of its pipe line properties, whether cash or stock of any company, might well be distributed by the Prairie Oil and Gas Company among its stockholders as a dividend of a part of its surplus earnings since the trust was created.

The surplus still remaining after such distribution of the pipe line stocks in each instance, namely, upwards of $48,000,000 for the Ohio Oil Company and upwards of $30,000,000 for the Prairie Oil and Gas Company, would seem ample for each company to hold to preserve the integrity of the corpus of this trust fund.  (Matter of Osborne, 209 N. Y. 477.)

I conclude, therefore, that the said stocks of the Illinois Pipe Line Company and of the Prairie Pipe Line Company rightfully belong to the plaintiff as a part of the net income of the trust fund earned and accumulated during the existence of that fund, and, therefore, that the controversy should be determined in favor of the plaintiff and against the defendants, and judgment rendered accordingly, without costs.

JENKS, P. J., CARR, STAPLETON and PUTNAM, JJ., concurred.

Judgment for plaintiff upon agreed statement of facts, without costs.