HARRIET B. LANIER, Plaintiff, v. MOSES TAYLOR and Others, as Trustees under the Last Will and Testament of HEBER R. BISHOP, Deceased, and Others, Defendants.

First Department, February 7, 1919.

**Will — testamentary trust — dividend on stock held in trust — issue as to whether dividend is payable to life beneficiary or becomes part of corpus — intention of testator governs — submission of controversy — failure to stipulate as to intention of testator, condition of property, etc.— parties.**

The question as to whether a dividend paid upon stock held in trust represents income payable to a life beneficiary or represents increment value which should be added to the corpus for the remaindermen, depends upon the intent of the testator in the creation of the trust. The will should be interpreted as far as possible from the standpoint occupied by the testator and attendant circumstances, such as the condition of his family, and the amount and character of the property ought to be taken into consideration as part of the *res gestæ* where the language is not plain nor the meaning obvious.

Where upon a submission of a controversy as to whether dividends declared upon stock should be paid to the life beneficiary or become part of the corpus of the trust, there is no stipulation as to the circumstances surrounding the making of the will, either as to the condition of the beneficiaries, or the situation of the property, the Appellate Division cannot determine the issue for the submitted case omits the most important facts bearing upon the construction of the will.

Moreover, *it seems*, that even were the facts aforesaid stipulated the Appellate Division could not determine the controversy when there is no stipulation as to the intention of the testator, that being an ultimate fact which must be stipulated; otherwise it can only come before the Appellate Division for determination upon the review of a judgment.

Furthermore, where the will provided that on the death of a life beneficiary without issue her share should be divided among her brothers and sisters, but in case of issue surviving the beneficiary they were made remaindermen, it is essential that the brothers and sisters of the plaintiff be made parties defendant to the submission, where she has now living two sons who may or may not take as remaindermen, dependent upon whether they survive the plaintiff.

DOWLING, J., dissented.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*Garrard Glenn* of counsel [*William B. Walsh* with him on the brief; *Shattuck, Glenn, Huse & Ganter*, attorneys], for the plaintiff.

*Roy C. Gasser* of counsel [*Anderson & Anderson*, attorneys], for the defendants Moses Taylor and others, as trustees, etc.

*W. Rossiter Redmond*, for the defendants Charles Lanier, 2d, and Reginald B. Lanier.

SMITH, J.:

The question presented is whether the plaintiff, the life beneficiary of a testamentary trust, is entitled to all or a part of certain cash dividends or distributions recently declared by the United Thacker Coal Company, a Maine corporation, owning coal lands in West Virginia. The defendants are the testamentary trustees and the remaindermen under the trust. They deny that the plaintiff is entitled to any of these dividends, claiming that the same should be held for the remaindermen as principal of the trust. The testator, Heber R. Bishop, died in December, 1902, his will being admitted to probate by the Surrogate's Court of New York county on December 22, 1902. This will created out of the residuary estate eight separate trusts for the benefit, respectively, of his eight children. The terms of each trust were identical. In each trust the trustees were directed to pay the net income quarterly to the child during the life of such child, and upon the child's death to pay over the principal to his or her children. The defendants are the trustees under the trust, also having been executors of the will. The plaintiff, a daughter of the testator, is the life beneficiary of one of the trusts, and the defendants Lanier are the remaindermen, being the only living children of the plaintiff.

Among the assets of which the testator died possessed were 3,692.66 shares of the par value of $100 each of the Ohio and Big Sandy Coal Company. The trustees allocated equally these shares to the eight trusts, so that 461.47 shares became part of the trust in which the plaintiff has an interest.

Originally the Ohio and Big Sandy Coal Company had properties in West Virginia and Kentucky. These properties they transferred to other corporations and these corporations

gave their stock to the Ohio and Big Sandy Company in exchange therefor. On July 30, 1903, the United Thacker Coal Company was organized under the laws of Maine, with an authorized capital of $5,000,000. On January 22, 1904, a little over a year after the testator's death, the Ohio and Lig Sandy Coal Company conveyed to the United Thacker Company all of the property which it directly owned in West Virginia. In consideration of this conveyance the United Thacker Company issued to the Ohio and Big Sandy Company $4,000,800 par value of its capital stock, being all the capital stock issued by the company; thus the Ohio and Big Sandy Company at all times owned all the stock of the United Thacker Company. Two companies in which the Ohio and Big Sandy Company held stock sold out their assets. That put the Ohio and Big Sandy Company in funds. The balance that remained after meeting current expenses was devoted to the improvement of the West Virginia holdings, title to which stood in the name of the United Thacker Company, the object of all these improvements being to prepare the West Virginia property for a future sale as a whole. It turned out that the United Thacker Company owned in all 61,400 acres in fee simple of land in West Virginia. On September 17, 1917, after negotiations lasting about nine months, the United Thacker Company sold 39,000 acres out of its total holdings of 61,400. Out of the net proceeds of sale it paid off the loans made to it by the Ohio and Big Sandy Company, to wit, $641,500, together with accrued interest amounting to about $275,000, in all, about $915,000, and it also paid off all its indebtedness. Out of the amount which it thus received the Ohio and Big Sandy Company paid two dividends aggregating $21 a share. These dividends were applied by the trustees to the life beneficiary of the stock of the Ohio and Big Sandy Company. Thereafter the Ohio and Big Sandy Company went into liquidation and they transferred their stock in the United Thacker Company and in the Federal Gas Company, another corporation in which it had stock, to the holders of the stock of the Ohio and Big Sandy Company. After paying back the Ohio and Big Sandy Company the amount of money borrowed, the United Thacker Company still had a large amount of cash on hand, the results of sale of these lands. Soon after a

resolution was adopted for the payment to their stockholders of $75 per share on the outstanding stock of the company. The trustees duly received their portion of this amount and allocated one-eighth thereof to the plaintiff's trust. This is the amount that is in controversy here, claimed both by the life tenant and by the trustees for the principal of the trust.

I have not specified the different companies in detail in which these trustees held the stock. The life tenant claims first that at the institution of the trust all these stocks had an aggregate certain value. At the time of the sale, in addition to the seventy-five dollars per share which was distributed, the stock had a valuation substantially equal to that which existed at the time of the institution of the trust. She insists, therefore, that all of this distribution constituted profits to which the plaintiff, as life tenant, is entitled. It seems that if all of this seventy-five dollars per share were distributed it would reduce the original valuation, as far as this estate is concerned, about one hundred and seventy-seven dollars, and this she concedes she must deduct from the seventy-five dollars a share, and only claims to recover so much of it as represents, together with the land remaining unsold, an increase in valuation over the valuation at the time said trust was created.

Again: In the formation of these corporations this land which was sold became the property of the United Thacker Company. The stock of that company when organized was estimated at par. Before the distribution of this seventy-five dollars per share the stock was estimated at 147. She secondly claims that this accumulated value represents profit and that she is entitled to such part of the seventy-five dollars per share as is represented by the difference between 100 par value and 147. This is the second claim, if she does not succeed upon the first claim. If the plaintiff does not succeed upon the first or second claim she still further claims that this land that was sold and is represented in this distribution cost a certain amount of money, that it was sold at a profit and that if she is not entitled under the first or second claim, she is, at least, entitled to so much of this dividend as represents the profit upon this sale or twenty-seven dollars and twenty-eight

First Department, February, 1919.                    [Vol. 186.

cents a share. Does any of this dividend represent profit or does it represent increment value which belongs to the remaindermen?

The answer to these questions must in the ultimate analysis depend upon the intent of the testator in the creation of this trust. In Schouler on Wills (5th ed. § 466) the rule is laid down: " The cardinal rule of testamentary construction, as already intimated, is that the plain intent of the testator as evinced by the language of his will must prevail, if that intent may be carried into effect without violating some deeper principle of public policy or of statute prohibition. * * * Courts have spoken of such intention as the ' law,' the ' pole star,' or the ' sovereign guide.' * * * But it is the intention of the testator as expressed in his own will which governs; and this paramount intention must be discerned through the words of the will itself, as applied to the subject-matter and the surrounding circumstances. * * * Yet every will should be interpreted, as far as possible, from the standpoint apparently occupied by the testator; and attendant circumstances, such as the condition of his family and the amount and character of his property, may and ought to be taken into consideration, as part of the *res gestœ* where the language is not plain nor the meaning obvious."

In *Matter of Osborne* (209 N. Y. 458) Judge CHASE in writing upon a question similar to the question here presented says: " In determining who is entitled to a dividend upon stock held in trust the intention of the testator or the maker of the trust must be carried out when such intent is clear, so far as such intent does not result in an unlawful accumulation of income. Very many cases arise, however, where the testator or maker of the trust had not considered the possibility of enormous dividends being declared by corporations to effectuate their reorganization or in the division of accumulated profits made necessary by new statutes, changed circumstances and modern rules and conditions, or, if such testator or maker of the trust had considered such possibility he failed to express himself in the instrument creating the trust so as to show any clear intention regarding the same."

In *Lawrence* v. *Littlefield* (215 N. Y. 561) Judge HISCOCK

says: " Stated more definitely and completely, the legal question presented by the complaint and demurrer is whether under a will creating a trust of unproductive real estate, income payable to a life beneficiary and remainder to others, with an imperative power of sale and equitable conversion of the real estate into personalty at the death of the testator, with actual sale and conversion accruing only after a considerable delay, the testator will be held to have intended that the proceeds thus and when realized should be apportioned between income payable from the time of his death to the life beneficiary and principal belonging to the remaindermen, or whether he is to be assumed to have intended that the proceeds thus realized should be treated wholly as principal with income payable thereon to the life beneficiary only from the date of actual conversion."

In *Edwards* v. *Edwards* (183 Mass. 581) Chief Justice KNOWLTON, in speaking of the case then in question, said: " In the present case the testator obviously intended that the entire property should be converted into one fund, and that the unproductive and speculative investments which he had at the time of his death should be changed without unreasonable delay." It is true that this intention is to be ascertained in certain instances by legal inferences. In *Lawrence* v. *Littlefield* (*supra*) there was an imperative power of sale creating an equitable conversion into personalty and it was in that case held that the legal inference was that the income to the life beneficiaries should commence with the death of the testator. In *Yates* v. *Yates* (28 Beav. 637), where a trust was created for the benefit of the testator's wife during life with remainders, but absolute discretion was left to his trustees as to whether or not they should sell or not sell, it was held that as the trustees were not required to sell at all the case was taken out of the general rule, even though the property had been wholly unproductive, and the life tenant could not, therefore, have an apportionment of the selling price. In that case, however, the court said: " The principle of the Court, I apprehend to be quite clear. Where a testator gives property to trustees, with an absolute trust for conversion, and with a discretion as to the time at which the conversion shall take place, if, from any causes whatever, arising from the

exercise of the discretion and judgment of the trustees, the conversion is delayed, then the tenant for life is not to be prejudiced by that delay, but is to have the same benefit as if the conversion had taken place within a reasonable time from the death of the testator, which is usually fixed at twelve months from that period." In the case at bar is stock in a corporation created by the testator himself with no direction to the trustees to sell, and whether this should be deemed an absolute trust for conversion must depend upon the circumstances surrounding the making of the will, both the condition of the beneficiaries and the situation of the property. None of these important facts are here stipulated. We are not told how much property the testator had at his death, nor at the making of the will, nor what was the income therefrom, nor the relative amount of property held both productive and unproductive. These stocks were carried upon the books of the trustees at a nominal value. If they were so considered by the testator and the balance of his estate yielded a substantial income for the benefit of the life beneficiaries the court might hold that there was no absolute trust for conversion, but that the trustees had a discretion whether or not they should sell the stock. If, on the other hand, the balance of the estate was relatively of little value so that the life beneficiaries would receive little except in case of sale of these stocks this fact would be a material fact in determining what was the intention of the testator in the creation of this trust. Inasmuch then as the submitted case omits some of the most important facts bearing upon the construction of this will, the issue here presented cannot fairly be determined thereupon and the submission must for this reason be dismissed.

Moreover, it is doubtful if with these facts stipulated this court would have jurisdiction to determine this controversy. The ultimate fact upon which the decision depends is the intention of the testator in the making of the will. That fact has not been stipulated.

In *Dreiser* v. *Lane Company* (183 App. Div. 773) the submission was dismissed because the ultimate fact was not stipulated. In that case numerous authorities are cited by Presiding Justice CLARKE to the effect that upon such a

submission the court has not the power to draw inferences of fact from the facts within the stipulated case. It cannot be said that the intention of a testator can be legally inferred from any of the facts herein stipulated, even though other facts be stipulated for the lack of which this submission must be dismissed. The ultimate fact not being stipulated must probably here be found, first, by the trial court, and it can only come to us for determination upon the review of a judgment therein rendered. The case of *Hazzard* v. *Philips* (173 App. Div. 425) in no way involves the question of the intent of the testator as inferred from circumstances existing when the will was made.

There is another reason why this question cannot be here determined, and that is for lack of necessary parties. In the will it is provided that in case of the death of any daughter without issue, the share to be set apart for such daughter should be divided among her brothers and sisters, and the issue of any deceased brothers or sisters. The plaintiff is a daughter and the life beneficiary of one of the eight shares of the trust. She has living now two sons. At her death, however, she may be without issue, in which case the corpus of the trust provided for her would go to her brothers and sisters. Whether these moneys should be allotted to the corpus of the trust or as profit to the life beneficiary is of material interest to them in case she should die without leaving issue. If it be held to be a part of the corpus of the trust it would in such contingency pass to them. If it be assigned to the life beneficiary, it would not pass to them. They have then an interest in the determination of this question, which makes them, as I view it, necessary parties. Because they are not made parties to this submission, therefore, the questions presented cannot be here determined. The submission must, therefore, be dismissed.

CLARKE, P. J., and MERRELL, J., concurred; SHEARN, J., concurred in result; DOWLING, J., dissented.

Submission dismissed. Order to be settled on notice