## WILLIAMSON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8000.

Circuit Court of Appeals, Seventh Circuit.
Dec. 29, 1942.
Rehearing Denied Feb. 1, 1943.

E. H. McDermott, Wm. M. Emery, and Richard S. Oldberg, all of Chicago, Ill. (Daniel R. LaBar, of Chicago, Ill., of counsel), for petitioner.

J. P. Wenchel and John W. Smith, Bureau of Internal Revenue, both of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Morton K. Rothschild, and J. Louis Monarch, Sp.Assts. to Atty. Gen., for respondent.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals, entered November 18, 1941, adjudicating deficiencies in petitioner's income tax for the years 1935 and 1936. Before the Board, respondent contended that petitioner was taxable under Sections 166, 167 and 22(a) of the Revenue Acts of 1934 and 1936, 26 U.S.C.A. Int.Rev.Acts, pages 727, 669, 895, 825. The Board sustained liability under Section 22(a) but made no decision as to the applicability of Sections 166 and 167. Before this Court, respondent makes no contention as to the applicability of Section 166, and we assume his contention in this respect has been abandoned. Respondent does urge that petitioner is liable under Section 22 (a), as found by the Board, and also under Section 167.

The trust which supplies the subject matter of this controversy was created by petitioner on November 26, 1935 and was irrevocable. It was designated as Trust No. 2.[1] The corpus was 5,000 shares of Class A common stock of General Candy Corporation. The trustees were petitioner, his wife, May J. Williamson, and their attorney, Lewis Edward Sauter, who drafted the instrument. The First National Bank of Chicago was named to succeed petitioner as a co-trustee. Stock certificates for the 5000 shares have been outstanding since November 26, 1935, in the name of the three trustees. A certificate for additional stock, representing a stock dividend in May, 1936, was also issued in the name of the three trustees.

The trustees were directed to administer the trust property for the benefit of petitioner's wife and their daughter, Ann Williamson[2] as long as either were living, and were authorized "in their uncontrolled discretion" to expend and apply the net income and so much of the corpus as they deemed necessary "for the maintenance, support, protection, welfare and financial benefit or security" of these two beneficiaries. Undistributed income could be held for subsequent distribution or added to the corpus. The trustees, also in their "uncontrolled discretion," were authorized to draw upon the corpus of the estate for the maintenance and support of the two beneficiaries. The trusted stock was to be voted as a unit at all meetings of the corporation, and, as long as petitioner lived, it was to be voted "in his sole and uncontrolled discretion as he may deem best." In all other matters, any two of

---

[1] The designation is explained from the fact that petitioner and his wife had theretofore created Trust No. 1, in which all of the shares of stock of General Candy Corporation owned by petitioner and his wife were transferred to the trustees, except the 5,000 shares which were transferred by petitioner to Trust No. 2. It is not contended that the provisions of Trust No. 1 have any pertinency to the issues now presented in connection with Trust No. 2.

[2] Petitioner was born November 5, 1888, his wife was born November 3, 1888, Ann Williamson was born April 16, 1923 and was a minor during the taxable years.

the three trustees were given the power and authority to speak for the trustees. Petitioner was given the right during his lifetime "to direct the sale, exchange, investment and reinvestment of the principal of the trust estate without being limited to investments authorized by law or any rule of Court as legal for trust funds." The trustees were directed to sell, purchase or exchange securities or other property "in accordance with the directions of the Donor or his agent," and no sale or exchange of the trust estate was permitted except on written direction from petitioner.

The First National Bank of Chicago was appointed successor-trustee upon the death of the petitioner, with the same rights, powers, duties and obligations as were conferred or imposed upon petitioner. Petitioner was authorized at any time to relinquish investment control to the trustees, and also authorized at any time to resume such control. The trustees were authorized to sell the trust property upon consent of two of such trustees, provided that petitioner be one of the trustees assenting thereto. Petitioner was given the power at any time "by an instrument in writing delivered to the Trustees to remove any Trustee, corporate or individual, and appoint and constitute successor-Trustees." Upon the resignation or removal of any trustee, petitioner was given the power and authority to examine the accounts of the trust estate, to investigate the acts of the retiring trustee, to approve his accounts, and to give a full release and discharge to such retiring trustee for all liability arising out of or in connection with such trust estate, and it was provided that such release or discharge should be effective and binding upon all beneficiaries.

The above is a brief synopsis of the trust agreement. Petitioner introduced oral testimony before the Board which, in the main, concerned the manner in which the trustees, including petitioner, had discharged their duties and obligations under the trust. We think, however, it is unnecessary to relate such testimony in detail. It is sufficient to state that there is no dispute but that the trustees (including petitioner) discharged their duties and obligations in good faith. It may be pertinent to mention, as found by the Board, that, as of January 1, 1935, there were 106,925 shares of Class A stock outstanding, of which petitioner owned 39,555 shares or 37%, his wife owned 11,165 shares or 10.4%, and his father owned 7,692 shares or 7.2%. Of the shares owned by the father, petitioner held 7,200 shares as trustee. The remainder of the stock was held by the public, two of whom, together with petitioner, served as directors of the corporation. Petitioner was also its president and general manager.

Petitioner in 1935 filed a gift tax return, reporting the 5,000 shares transferred to Trust No. 2 as gifts to his wife and daughter, and paid the gift tax thereon. The trustees also paid an income tax on the 1936 trust income. Because of some controversy as to the construction which an auditor for the Revenue Department placed upon the trust instrument, an agreement was executed December 18, 1937, by petitioner, his wife and Mr. Sauter. This agreement provided, in substance, that petitioner would continue to support his wife and daughter from his own personal resources and would not look to the income from the trust to relieve him in whole or in part; that the powers conferred upon petitioner by the trust instrument were intended to be exercised only in a fiduciary capacity, and petitioner's entire reversionary interest in the trust was transferred to his daughter and her heirs.

Before the Board, as here, respondent contended for the application of Section 22(a) under the rule of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. It is urged that petitioner retained such a substantial measure of control over the trust that he must be treated for tax purposes as the owner thereof. The Board concluded: "In a case involving a long term trust (such as trust No. 2) the doctrine of the Clifford case may be applicable if the grantor has retained a very substantial measure of control over the trust."

Among the numerous circumstances which the Board considered in support of its application of the Clifford rule was petitioner's power to remove the other two trustees, to appoint successor-trustees, to relieve a retiring trustee of liability so as to bind the beneficiaries; the power to vote the trusted stock, thus retaining for himself the right to participate in the affairs of the corporation of which he was president; the power to direct sales of trust property without limitation as to

the legal investments; and the power to preclude sales and investments by the trustees except upon direction of petitioner.

Petitioner seeks to distinguish the Clifford case largely upon two grounds: (1) The long term trust in the instant case in contrast with the short term trust in Clifford, and (2) petitioner in the instant case was one of three trustees while in Clifford the donor was sole trustee.

Petitioner in his brief before this Court, as well as in oral argument, stressed the recent decision of this Court in Stuart v. Commissioner, 7 Cir., 124 F. 2d 772. Special reliance was placed upon the effect of our holding as to the restraint imposed upon a trustee as a fiduciary by the law of Illinois. At the time of oral argument in the instant case, the Stuart case was pending in the Supreme Court, and, desiring all the light possible, we have waited for the Supreme Court's decision. The case was decided November 16, 1942. (The case involves two trusts, and is entitled Commissioner v. Douglas Stuart No. 49 and Commissioner v. John Stuart No. 48.) Rehearing was denied (with some amendments to the opinion not here material) on December 14, 1942. 317 U.S. ——, 63 S.Ct. 140, 87 L. Ed. ——.

With all due respect to the Supreme Court, the light which we so eagerly anticipated, especially as to the applicability of Section 22(a) is not as illuminating as we had hoped for. So we suggested to counsel for the respective parties that they submit a memorandum of their views as to the effect which the Stuart decision has upon the instant case. This has been done, and the light which we thought we perceived has been almost extinguished.

As we interpret the decision of the Supreme Court, it is an affirmance of the decision of this Court that the income from the John Stuart trust was not taxable to the donor under Section 166. Our reasoning, that under Illinois law a restraint was imposed upon the trustees which would not permit the revesting of the trust property in the donor (grantor), was accepted. Our conclusion, however, that by the same token there was no liability under Sections 22(a) or 167 appears to have been overruled. In other words, the restraining effect imposed by state law upon the trustees was such as to preclude liability

under Section 166, but not as to the other two Sections.

There is no question but that each of the trusts in the Stuart case were long-term trusts. If the rule of the Clifford case is to be confined solely to short-term trusts, it is difficult to discern why the Supreme Court in the John Stuart trust reversed this Court and directed that it be remanded to the Board of Tax Appeals. Certainly it was not for the purpose of a determination by the Board as to whether it was a short- or long-term trust. The Supreme Court states on page 10 of its opinion [63 S.Ct. 148], "the triers of fact have made no finding upon this point. Cf. Helvering v. Clifford, supra, 309 U.S. 331, 336, 338, 60 S.Ct. 554, 84 L.Ed. 788." What is the point referred to in this quotation? We have concluded it is the first sentence of the same paragraph, "that economic gain for the taxable year, * * * may be obtained through a control of a trust so complete that it must be said the taxpayer is the owner of its income." In other words, if that situation is found to exist, the grantor is taxable under the Clifford doctrine. The fact that the trust is of long term or that trustees other than the donor are named does not preclude its application. They are only elements to be considered by the trier of the facts in appraising the situation.

■ If we are correct in this analysis of the Court's opinion, it follows that the appraisement must be made by the Board and its determination be accepted, unless we can say as a matter of law that it is erroneous. It will be noted that the Court, following the quotation above stated, refers to page 338 of 309 U.S., 60 S.Ct. at page 558 of the Clifford case whereon there appears the following statement: "The failure of Congress to adopt any such rule of thumb for that type of trust must be taken to do no more than to leave to the triers of fact the initial determination of whether or not on the facts of each case the grantor remains the owner for purposes of § 22(a)."

The importance which must be attached to a decision of the Board as to the applicability of Section 22(a) is also emphasized in Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037. In that case, the Board considered only the question of liability under Sections 166 and 167. This was prior to the Clifford deci-

sion. Subsequently, the Court of Appeals, following the Clifford case, held the taxpayer liable under Section 22(a). There, on the taxpayer's complaint, the cause was reversed for a decision by the Board. In doing so, the Court, on page 560, of 312 U.S., 61 S.Ct. at page 723, 85 L.Ed. 1037, stated: "But the Board of Tax Appeals neither found the facts nor considered the applicability of 22(a) in the light of the Clifford case. Congress has entrusted the Board with exclusive authority to determine disputed facts. Under these circumstances we do not feel that petitioner should be foreclosed from all opportunity to offer evidence before the Board on this issue, however remote may be his chance to take his case out of the Clifford rule."

It would serve no useful purpose to discuss the numerous cases cited by petitioner, including several from this Court, wherein long-term trusts have been distinguished from the Clifford case. It appears certain that the Supreme Court recognizes no such distinction. Otherwise, the remanding of the John Stuart trust (a long-term trust) to the Board of Tax Appeals was a futile gesture.

■ In the instant case, as already stated, the Board found Section 22(a) applicable under the Clifford rule. There is no occasion to repeat the facts, including the provisions of the trust agreement from which the Board reached its decision. Whatever view we might have as a trier of the facts, we are not prepared to hold as a matter of law that its decision was erroneous.

As stated, the Board, having found that petitioner was liable under Section 22(a), made no decision as to the applicability of Section 167. Article 10 of the trust instrument authorized the accumulation of the net income and its addition to corpus. It also provides that if petitioner outlive the beneficiaries, the trust shall terminate and the entire trust estate be delivered to petitioner. It was the original position of respondent before this Court (and we assume before the Board) that inasmuch as the trust income for the taxable years was accumulated, there was a possibility that it might come into possession of the

taxpayer and that, therefore, it was chargeable to him under Section 167. Since the decision of the Supreme Court in the Stuart case, however, respondent urges that Section 167 is applicable for the reason assigned by that Court as to the Douglas Stuart trust. There is no uncertainty as to the holding of the Supreme Court in this respect. On the last page of its opinion [63 S.Ct. 149], the Court said: "Under such a provision the possibility of the use of the income to relieve the grantor, pro tanto, of his parental obligation is sufficient to bring the entire income of these trusts for minors within the rule of attribution laid down in Douglas v. Willcuts [296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391.]"

■ In the instant case, any two of the three individual trustees were given full power and authority to exercise all the powers of the trustees under the trust instrument (except voting the trusted stock). Thus, the petitioner and his lawyer (the wife being a beneficiary with an adverse interest) were given an "uncontrolled discretion" to apply all of the net income as they deemed necessary "for the maintenance, support, protection, welfare and financial benefit or security of the wife and minor child." There was no direction as to how the income should be divided between the wife and the minor child; in fact, it is discretionary with the trustees, and we see no reason why petitioner and his attorney could not have distributed all of such income for the support and maintenance of the minor beneficiary. Certainly there is no room for doubt that it was possible the income could have been thus applied.[3] This being so, petitioner is liable under Section 167.

■ Petitioner contends that the Board should not be permitted at this late date to rely upon a contention different from that heretofore advanced, citing Helvering v. Wood, 309 U.S. 344, 348, 60 S.Ct. 551, 84 L.Ed. 796. Without analyzing the situation which the Court had before it in that case, we think petitioner's contention must be denied on the authority of Hormel v. Helvering, 312 U.S. 552, 555-560, 61 S.Ct. 719, 85 L.Ed. 1037.

---

[3] It is true, a subsequent agreement was executed by which petitioner agreed that the income from the trust was not to be used to relieve him of the duty to support his wife and daughter, but this agreement, made subsequent to the taxable years, is immaterial to the instant question.

We therefore affirm the Board's conclusion that Section 22(a) is applicable and, in addition, hold that petitioner is liable under Section 167.