## FOERDERER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8442.

Circuit Court of Appeals, Third Circuit.
Argued Dec. 21, 1943.
Decided Jan. 31, 1944.

James S. Y. Ivins, of Washington, D. C. (Ivins, Phillips & Barker, of Washington, D. C., on the brief), for petitioner.

Loring W. Post, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before BIGGS, GOODRICH, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal from a decision of the United States Tax Court which found the following facts among others:

"On July 1, 1924, petitioner created an irrevocable trust naming himself as sole trustee and transferring certain securities to the trust. The trust instrument provided that the income thereof was to be paid to petitioner's wife, Ethel Brown Foerderer, for her life, and upon her death and until petitioner's death, to the child or children of his wife or the issue of such child or children per stirpes. Upon the death of petitioner and his wife the corpus was to be distributed as petitioner's wife should by will appoint and in default of such appointment to their descendants then living per stirpes. If petitioner's wife died intestate leaving no descendants, the corpus was to be distributed to persons entitled to petitioner's estate under the intestate laws of his domicile.

"Petitioner, in administering the trust as trustee, made advances to his wife in excess of the income thereby causing an impairment of the corpus of the trust. This impairment steadily increased from $5,070.-54 at the end of 1928 to $120,761.59 at the end of 1936. By the end of 1939 the impairment was reduced to $108,396.68."

The only question involved is whether the petitioner continued in fact as the economic owner of the trust corpus and is, therefore, taxable on the trust income under Section 22 (a) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1008.[1]

Under the agreement, the grantor as sole trustee, had a very substantial power to shift beneficial interests in the trust. He could make advances to a beneficiary to be charged against future income. If the beneficiary for life, having received advances, should die before such advances had been recouped, said advances would be charged against the corpus. There was no limitation placed on the amount of such advances and the remaindermen might well receive little, if anything, from the trust. Following the death of the wife, who is the life beneficiary, advances could be made to one or two of the three children if then living, to the exclusion of the other or others. The trustee has the authority to borrow money without limit for this purpose, by

---

[1] "Sec. 22.   Gross income.

"(a) General   Definition.—'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.   *   *   *"

54

pledging the trust property. If that situation arose, the interest of such other child or children could be impaired or destroyed.

The agreement further gives the trustee the power to sell the securities of the trust or any part thereof, or other property (real or personal) which might from time to time comprise the principal of the trust estate, at public or private sale for such price or prices and upon such terms as the trustee might deem fit and proper. The trustee has the power to make any investments of the trust funds so-called, legal investments or otherwise, without liability for any loss occurring to the trust estate therefrom. Under the agreement the trustee has the power to appoint either his successor or a cotrustee. If a cotrustee were appointed, the grantor reserved the power to remove such person without any liability attaching to the grantor for anything said associate trustee may or may not have done and from all duty to account in the premises.

The circumstances conceded in the statement of facts point strongly to the grantor continuing as the real owner of the trust. Until 1936 the wife, as the life beneficiary, paid large sums from the trust as premiums on life insurance on the life of the trustee. Prior to 1936 household expenses of the taxpayer and his family were paid on occasion from income and advances out of the trust.

In Brown v. Commissioner, 3 Cir., 131 F.2d 640, the trust involved was for the life of the settlor with the corpus to go to her estate upon the termination of the trust. This Court said at page 641: "The factors are not the niceties of title but the controls retained by the settlor."

Commissioner v. Buck, 2 Cir., 120 F.2d 775, also involved a long term trust. That decision, as did the Brown case, followed Helvering v. Clifford, 309 U.S. 331, 60 S. Ct. 554, 84 L.Ed. 788, and the Court, referring to that latter case, said at page 778: "The retained 'satisfactions which are of economic worth' are so numerous, that Buck, like Clifford, 'has rather complete assurance that the trust will not effect any substantial change in his economic position'; while he lives, he has as much to say about the management of the corpus as before he made the trust; neither he nor his acquaintances will observe any important practical difference."

It is true that the trust in the Clifford matter was for a short term but the foundation of that decision was that the grantor retained so many attributes of ownership as to justify the conclusion that he continued to be the owner of the trust properties within the meaning of Section 22 (a).

The decision of the Tax Court is affirmed.