### CUSHMAN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 47.

Circuit Court of Appeals, Second Circuit.

Jan. 14, 1946.

FRANK, Circuit Judge, dissenting.

Jacob Mertens, Jr., of New York City (Martin A. Schenck and Archibald A. Patterson, both of New York City, of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and Muriel S. Paul, Sp. Assts. to Atty. Gen., for respondent.

Before SWAN, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The petitioner is a resident of New York who in 1935 created an irrevocable trust which is to be construed according to the laws of that state. It was for the benefit of the children of himself and his

512

wife, theretofore or thereafter born, and its term was for the duration of the lives of two named minor children, Elizabeth Ann Cushman and Lewis Arthur Cushman, Third, and that of the survivor of them. The petitioner and his wife were named as co-trustees with the Guaranty Trust Company of New York as successor trustee after the death of the surviving original trustee. The trustees were to hold, invest, reinvest, and manage the trust estate and pay the net income in equal shares to, or apply it for the benefit of, any living children of the petitioner and his wife, or the issue of any child who might then be dead. The net income could, however, in the discretion of the trustees be accumulated for the account of any of the grantor's children during their respective minorities and, if so accumulated, was to be paid over to such children, when they attained their respective majorities, "either in cash or in the form in which it may be invested at that time."

Upon the death of the survivor of the named children the trust estate was to be paid and transferred in equal shares per stirpes to the then living descendants of the grantor, and, in default of any descendants, to whomsoever should be appointed to receive it by the will of such survivor and in default of a valid appointment by will, in whole or in part, "to the persons who would be entitled to receive the personal estate of such survivor under the intestate laws of New York if such survivor had then been a resident thereof." The trust instrument also provided that the trust should forthwith cease whenever the grantor's wife during her life, "or after her death the then President of Guaranty Trust Company of New York, shall so direct in a writing signed and delivered to said Trustees or any surviving Trustee or successor Trustee, and the principal of said trust estate and all accumulated income therefrom shall be delivered and paid over forthwith in the manner hereinabove provided as upon the death of the survivor of said Elizabeth Ann Cushman and Lewis Arthur Cushman, Third."

The petitioner, who then held slightly less than 40,000 of a total of 90,000 outstanding Class B shares of the American Bakeries Corporation which, with an undisclosed number of Class A shares which had been issued out of 58,000 authorized, carried all the voting rights, transferred 20,000 of his Class B shares to the trustees as the sole corpus of the trust. He had organized American Bakeries Corporation in 1927, has been a director thereof continuously since then and is chairman of the corporation's Executive Committee. His purpose in creating the trust was not to secure income for the support of his children, and none of the income was ever so used, it all having been accumulated, but was the twofold purpose, first, of putting the property beyond the reach of himself, his friends, relatives, business associates and possible creditors, thus assuring an estate for his children; and, second, of preserving so much of his Bakeries stock intact so that his son, if competent and if he so desired, could at some time become associated with that corporation with the advantage of being a holder or beneficial owner of its stock. Until July of 1937, no dividend was ever declared on the Class B stock.

In order to carry out his second purpose and to prevent the sale of the Bakeries shares by a trustee desiring to achieve diversification and to attempt to better the prospect of obtaining income, petitioner named himself and his wife as trustees. He reserved to himself as grantor, and gave to his wife after his death the power to control retention or sale of trust property and to direct investment and reinvestment of trust funds. The trustees at any time, as fully as if they were the individual owners of the securities held in trust, were empowered, subject to the right of the petitioner or his wife to direct sales and investments, to participate in any capital readjustment of any corporations whose securities should be held in the trust.

The Commissioner determined that the trust income for 1938 was taxable to the petitioner under Internal Revenue Code §§ 22(a) and 167, 26 U.S.C.A. Int.Rev.Code, §§ 22(a), 167. The Tax Court found it unnecessary to decide whether there was any tax liability under § 167 since it sustained the Commissioner under § 22(a), relying upon Helvering v. Clifford, 309 U. S. 331, 60 S.Ct. 554, 84 L.Ed. 788. It went on the grounds that (1) it was a family trust; (2) that, though not a short term, its "indeterminate length" was a comparable factor; (3) that, in any event, the length of the term wasn't decisive; (4) that the lack of a reversion to the grantor was insignificant; (5) that powers exercisable only as trustee were the equivalent of powers reserved as grantor, and that in-

asmuch as the co-trustee was the petitioner's wife, the petitioner had really retained full powers to vote and control the trust investment in a corporation in which he was interested; and (6) that the income was usable to discharge an obligation of support. Six judges dissented on the ground that family trusts are ordinarily to be governed by Code §§ 161 to 172, that such trusts are taxable under § 22(a) and the Clifford case only where the grantor has retained what amounts to the economic control of that corpus, and that the criteria of the majority for determining that he did not cut himself off from such economic control were fallacious. This appeal followed.

■ Although it may be that the presence of sufficient factors to bring taxation of a trust within the doctrine of the Clifford case, supra, is to treated as a question of fact, see Paul, Dobson v. Commissioner: The Strange Ways of Law and Fact (1944) 57 Harv.L.Rev. 753, 817 and n. 295, 833-34, 848, nevertheless, whether or not a particular characteristic in the relationship of the grantor to that trust may be treated as an element of "control" within the Clifford doctrine is a problem of "general applicability" reviewable under Dobson v. Com'r, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248. See Bingham's Trust v. Com'r, 325 U.S. 365, 65 S.Ct. 1232; Com'r v. Scottish American Investment Co., 323 U.S. 119, 65 S.Ct. 169; Com'r v. Buck, 2 Cir., 120 F.2d 775; Phipps v. Com'r, 2 Cir., 137 F.2d 141.

■ In the Clifford case, the Supreme Court found three broad grounds for the taxation of the income of the trust to the grantor: (1) The shortness of the life of the trust, there a term for five years or until the death of the beneficiary; (2) the fact that the beneficiary was the grantor's wife and that the trust at best merely worked a "temporary reallocation of income within an intimate family group" [309 U.S. 331, 60 S.Ct. 557]; and, (3) the broad powers retained by the grantor as such and as trustee so that he had "rather complete assurance that the trust [would] not effect any substantial change in his economic position." After only a short time the grantor would recover the corpus outright, having had sufficient interim control to assure recovery in the form he wished. The determination of standards which may properly be applied in finding the presence of a Clifford element and of

weighing the relative importance of each element found is the problem here presented. See Magill, Taxable Income (Rev. ed. 1945) 326-29; Magill, What Shall Be Done with the Clifford Case? (1945) 45 Col.L.Rev. 111, 116; Ray, The Income Tax on Short Term and Revocable Trusts (1940) 53 Harv.L.Rev. 1322, 1352, 1353.

■ First, although it may be that the Clifford approach is proper only where, as here, there is an "intimate family group" situation, relationship of the beneficiary is really important, not as a controlling factor, but as indicating that the grantor has retained the economic benefits of the property transferred into trust. See Magill, 45 Col.L.Rev. supra at 125-26.

■ Second, the instant trust is not a trust for a definite term. It is to last for the longer of the two named lives in being, i.e., it is to last for the maximum length of time allowed under the New York rule against perpetuities unless sooner terminated by the wife or the president of a bank having no interest a termination would serve. Under some circumstances, "indeterminate length" may be the equivalent of a short term, but should not be so treated where that "indeterminate length" is the maximum legal length of the trust unless shortened by one who has no advantage to gain by a termination. How far it might be necessary in some cases to consider life expectancies and the interest of the grantor in his choice of lives to name need not now be considered.

■ Third, there is no reversion. Furthermore, the possibility that the grantor might ever inherit any of the trust property is so remote that it is non-existent in the light of probability. If all the grantor's children were to die without issue, and if the last of them failed to exercise a valid appointment by will, the grantor, if then living, might inherit some of the trust estate. The presence of an expectable reversion is a strong indication that the Clifford doctrine will apply. See Hormel v Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037; Com'r v. Barbour, 2 Cir., 122 F.2d 165, 166, certiorari denied 314 U.S. 691, 62 S.Ct. 361, 86 L.Ed. 553; Helvering v. Elias, 2 Cir., 122 F.2d 171, certiorari denied 314 U.S. 692, 62 S.Ct. 361, 86 L.Ed. 553. But where the chance that the grantor will ever get anything is so remote as it is here, it certainly cannot be considered an economic benefit closely retained by the

514

grantor. See Com'r v. Branch, 1 Cir., 114 F.2d 985, 987, 132 A.L.R. 839; Magill, 45 Col.L.Rev. supra, at 116–118 and n. 27.

Fourth, the petitioner reserved to himself as grantor power to control retention or sale of trust property and to direct investment and reinvestment of trust funds, and he invested himself as trustee with the extraordinary power of entering into capital readjustments as well as all the ordinary trustee powers, including that of voting the stock held in the trust. Analytically the powers held in the two capacities are, because of those different roles, different. The powers held as trustee are, of course, held in a fiduciary relationship and must be exercised only in the best interests of the beneficiaries. The power to vote the stock held in trust may not be exercised by the trustee for his own purposes; and where such conduct is threatened, a court of equity will direct the voting of the stock. See 2 Scott, Trusts (1939) § 193.1. It is a question of interpretation whether or not the powers reserved as grantor are held in a fiduciary capacity or for the grantor's own purposes. Ordinarily, they are held in a fiduciary capacity, and have been reserved only because of some special talent or particular source of knowledge of the grantor. If they have been so reserved, the exercise of them is subject to court scrutiny, Phipps v. Com'r, supra; but if they have been reserved by the grantor for his own purposes, they are subject to no control in their exercise. Com'r v. Branch, supra; cf. Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L. Ed. 154; see Scott, op. cit., supra, at § 185. From the grantor's purpose as found by the Tax Court, it seems certain that the powers this petitioner retained as grantor were retained in a fiduciary capacity. It has been suggested that whether or not the powers are fiduciary should be determinative of the income tax consequences of the establishment of a trust. Compare United States v. Anderson, 6 Cir., 132 F.2d 98, with Armstrong v. Com'r, 10 Cir., 143 F.2d 700. But in the Clifford case, the powers were all conferred upon the trustee and so were all fiduciary powers. Yet the Supreme Court found that they resulted in economic benefit to the grantor-trustee because the whole trust amounted to a temporary reallocation of income. That is not the situation in this instance and the fact that these powers retained by the grantor may not be used contrary to the best interests of the beneficiaries would seem to remove them from the scope of the philosophy behind the Clifford case and to distinguish this trust from that considered in Commissioner v. Buck, supra, and Bush v. Com'r, 2 Cir., 133 F.2d 1005 where the grantor retained in addition to the right to dispose of the share of a beneficiary predeceasing him, broad powers of control over the trust estate through control of the trustee but had no fiduciary obligations. See Magill, 45 Col.L.Rev. supra, at 124, 125.

Fifth, the Internal Revenue Code § 167(c), added by § 134(a) of the Revenue Act of 1943, provided a rule contrary to that of Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154, so that the income of this trust, never having been used for the support of the grantor's children nor to discharge any other obligation of the grantor, is not taxable to him under § 167, the filing of the necessary consent, pursuant to T. R. 111, § 29.167-3, to make § 134 retroactively applicable to the taxable year 1938 having been shown. It may be that the usability of the income of a trust to discharge a duty of support is a proper factor to be considered under § 22(a) in spite of the apparent exclusiveness of the treatment of such a situation by § 167(c). See Report of the Senate Committee on Finance, S.Rep. No. 726, 78th Cong., 1st Sess. 68-69, 1944 Cum.Bull. 973; Report of the House Committee on Ways and Means, H.R.Rep. No. 871, 78th Cong., 1st Sess. 51, 1944 Cum.Bull. 901. But see Helvering v. Helmholz, 296 U.S. 93, 56 S. Ct. 68, 80 L.Ed. 76; Guterman, The Federal Income Tax and Trusts for Support (1944) 57 Harv.L.Rev. 479, 487. Yet the importance of it as a criterion of taxability under § 22(a) would vary with the extent of the economic benefit received by the discharge of the duty to support; and if taxation is to be predicated on that benefit, it should also be limited by that benefit. Cf. Mallinckrodt v. Nunan, 8 Cir., 146 F.2d 1, 5, certiorari denied 324 U.S. 871, 65 S. Ct. 1017; see Paul, Five Years with Douglas v. Willcuts (1939) 53 Harv.L.Rev. 1, 30; Guterman, loc.cit. supra at 488–491. And here that benefit, the amount of the duty of support as shown by the undisputed evidence, was only about 1/11th of the trust income taxed to the grantor. Moreover, a sound basis for the Tax Court's passing finding that the income from the trust was usable to discharge the grantor's

obligation to support his minor children, the beneficiaries, is apparently lacking for the law of New York seems to be to the contrary, he being amply able to support them. (Matter of Cohn, 153 Misc. 757, 276 N.Y.S. 59; Matter of Rogers, 2d Dept., 22 App.Div. 428, 431, 48 N.Y.S. 175, affirmed 161 N.Y. 108, 55 N.E. 393; Shanley v. Bowers, 2 Cir., 81 F.2d 13.

This grantor cannot spend the income for his own uses as could be done in Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391, nor change the takers of, or the proportions in which they take, income as in Com'r v. Buck, 2 Cir., 120 F.2d 775; Edison v. Com'r, 8 Cir., 148 F.2d 810; Foerderer v. Com'r, 3 Cir., 141 F.2d 53, 54; Williamson v. Com'r, 7 Cir., 132 F.2d 489; nor can he ever recover the corpus, as in Helvering v. Elias, 2 Cir., 122 F.2d 171, certiorari denied 314 U.S. 692, 62 S.Ct. 361, 86 L.Ed. 553; Com'r v. Barbour, 2 Cir., 122 F.2d 165, certiorari denied 314 U.S. 691, 62 S.Ct. 361, 86 L.Ed. 553; nor control the action of the trustee for his own benefit as in Bush v. Com'r, 2 Cir., 133 F.2d 1005. His retained powers over of the corpus and income are, we think, so negligible that they do not make the income of the trust taxable as his own within § 22(a) as construed in the Clifford case.

Reversed.

FRANK, Circuit Judge (dissenting).

I dissent because of Stuart v. Commissioner, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154; Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, and Bingham's Trust v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, and John Kelley Co. v. Commissioner, 66 S.Ct. 299.

In the Stuart case, 317 U.S. at page 169, 63 S.Ct. at page 148, 87 L.Ed. 154, there was presented to the Supreme Court a possible Clifford question which the Board had not considered, and the Supreme Court apparently remanded for decision by the Board. The sole facts which the Supreme Court noted as raising the Clifford issue were (1) that the trustees, consisting of the grantor, his wife and his brother, had power to vote the trusteed stock of the company of which the grantor was an executive and (2) that the grantor reserved the right to purchase the trusteed stock by substituting other property of at least equal market value, satisfactory to the trustees.

Here the trustees are the grantor and his wife who has no adverse interest. Here the grantor and his wife have the power to vote the trusteed stock of a company of which he is an important executive; the grantor reserves the power to direct the trustees to sell any part of the trust estate at prices he names; and the trustees (the grantor and his wife) may invest and reinvest without regard to legal restrictions on investments of trust funds.

In the Stuart case, on remand, it appeared that the taxpayer, his immediate family and the trusts owned, together, but 5.4% of the outstanding stock of the company, some of the stock of which was in the trust; the Tax Court found that taxpayer "through control of the trust corpus," had not "retained any stock control" of the company, and therefore held against Cliffordization. See 2 T.C. 1103. But here, as we recently said, when discussing the Tax Court's decision of the instant case in our opinion (per L. Hand, J., in Kohnstamm v. Pedrick, 153 F.2d 506, "the shares in the fund, together with what the settlor himself owned, gave him forty percent of the whole voting strength of a corporation in which apparently the shares were widely scattered"; and we went on to say that, in such a company, 20% often constitutes control.

Had the present case been decided below by a district court, we would, as we said in Kohnstamm, be free to pass on the Clifford issue without regard to the decision of the lower court. But even in Kohnstamm—where we pointed out that the stock control was of little significance because the stock was that of a "closed" corporation—we said that had the decision been by the Tax Court, its "decision would conclude us, unless there emerged with inescapable clarity some error of law that we could not evade."[1] In the light of the Stuart case, I think no such error here appears.

The reason for the action taken by the Supreme Court in the Stuart case becomes more clear when we read Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, Bingham's Trust v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, and John Kelley Co. v. Commissioner, 66 S.Ct. 299. It would seem that the Supreme Court regards a Tax Court decision of a Clifford question as a one of "mixed law and fact" which "will usually afford little concrete

---

[1] Phipps v. Commissioner, 2 Cir., 137 F.2d 141, was a case of that kind.

guidance for future cases" except when, in reaching its decision, the Tax Court announces "a rule of general applicability,"[2] as, for instance, if the Tax Court decided that all trusts in which the grantor has any voting power in trusteed stock come within Clifford. No such "rule of general applicability" appears in the Tax Court's decision in the instant case.[3] It is significant, I think, that when the Court, in the Dobson case, 320 U.S. at page 501, 64 S.Ct. at page 246, 88 L.Ed. 248, assimilating decisions of the Tax Court to those of administrative bodies, said "the judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body," it cited the Clifford case.[4]

---

[2] Bingham's Trust v. Commissioner, 325 U.S. at page 370, 65 S.Ct. at page 1235.

[3] That was not true in Phipps v. Commissioner, supra.

[4] Since it is sometimes suggested that the Bingham case overruled the Dobson, it is of interest that Dobson was recently cited in Commissioner v. Flowers, 66 S.Ct. 250, John Kelley Co. v. Commissioner, supra.