BELARMINO ÁLVAREZ FEITO, Plaintiff and Appellant, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

No. 11037. Argued March 8, 1954.—Decided June 14, 1955.

396

*Heriberto Torres Solá* for appellant. *J. B. Fernández Badillo, Acting Attorney General,* and *Manuel J. Medina Aymat, Assistant Attorney General,* for appellee.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On July 1, 1941, the plaintiff-appellant, Belarmino Álvarez Feito, partner of the former Mercantil Sobrino de Villamil, instructed the liquidators of that firm to issue to each one of his children, Belarmino Álvarez García, twelve years old, and José Luis Álvarez García, nine years old, in payment of his assets or as alienation price of his share in the partnership, a stock certificate of the new corporation organized to continue the business of the dissolved partnership. By virtue of that request on July 1, 1941, the corporation issued certificate No. 9 for 150 shares worth one hundred dollars each in favor of the minor Belarmino Álvarez García and certificate No. 10 for one hundred and fifty shares worth one hundred dollars each in favor of José Luis Álvarez García.

This family gift or assignment of the corporate capital remained unchanged until June 29, 1942, when Belarmino Álvarez Feito, now together with his wife Laura García, appeared before the notary Heriberto Torres Solá to convert into two independent trusts the gift or assignment of the stock certificates which he had made in favor of his two sons. In the public deed executed for that purpose, the plaintiff-appellant stated that his purpose in requesting the issuance of the stock certificates was to create with them "a trust in favor of his children Belarmino and José Luis Álvarez García, twelve and nine years of age, respectively, students and residents of Río Piedras." In the first clause of execution the parents create a trust inter-vivos, "retroactive to July 1, 1941." In that same deed the two trustees, Nicolás Vargas García and Ángel Joglar Suárez, appeared to accept their designation as such and the delivery of the certificates.

On June 27, 1950, after the latter transactions were accomplished, the then Treasurer of Puerto Rico notified the plaintiff-appellant of a final determination of income-tax

deficiencies for the years 1943, 1944, 1945, amounting to $5,449.26, listed as follows:

| | |
|---|---|
| 1943 | $237. 22 |
| 1944 | 2, 128. 81 |
| 1945 | 3, 083. 23 |

which represented the income tax on the dividends of the shares held in trust.

The plaintiff-appellant, Belarmino Álvarez Feito, filed a petition in the former Tax Court of Puerto Rico asking that the assessment of taxes be set aside since it represented profits of trust property declared in due time by the trustee. The former Tax Court of Puerto Rico sustained the decision of the former Treasurer of Puerto Rico and plaintiff-appellant has appealed to us.

The assignment of errors gives rise to three main issues, the decision of which will dispose of the case. The first question is as follows: Did the transfer of stock made by plaintiff-appellant in favor of his minor children on July 1, 1941, deprive him of all right to dispose of those shares for the subsequent creation of the trust? The Secretary of the Treasury contends that since plaintiff-appellant had given away those shares on July 1, 1941, he could not subsequently dispose of them to create a trust without the corresponding legal authority. The taxpayer, on the contrary, urges that he did not relinquish the property until the trust was created since those shares were property of the paternal estate acquired by two minors who lived with their parents, and with a touch of prudence he contends that the transfer of stock made on July 1, 1941, as well as the creation of the trust on June 29, 1942, constituted a single juridical transaction since the trust was established retroactive to July 1, 1941.

Assuming that the shares were donated when their transfer was made on July 1, 1941, we would undoubtedly be faced with a case of an imperfect gift, that is, insufficient for a valuable consideration, not only because of the obvious lack

of acceptance disclosed by the evidence, but also because any gift from the paternal estate to a minor who lives with his father produces the legal anomaly of a gift for the benefit of the donor himself.

■■ As to the capacity of the minor to accept a gift by himself, we wish to refer to the following excerpt from Castán: "The traditional doctrine reflected in the Roman Law and the Old Spanish Law classified the incapacity of the minors in the following three grades: The infancy (until seven years of age), impuberty (until 12 or 14 years old) and puberty. In the first, the minor could not partake of any act in civil life. In the second, he could concur in civil acts with his tutor and he could acquire rights by himself. In the third, he could by himself perform many acts, although for some he needed the assistance of the curator. The Civil Code, in merging the ancient institutions of tutorship and curatorship, has abolished the different stages of minority and has unified the status of the minor, *but it still points out some particular ages in connection with specific rights.* On the other hand, the condition and general capacity of minors is not clearly established in the Code. Since it is unquestionable, however, that the general rule points to the incapacity of the minors (supplied by *patria potestas* or, in its default, by tutorship) we shall now set forth the exceptional cases where unemancipated minors or those disqualified by reason of age, are considered capable to act . . . B-3: to receive donations which are not onerous §§ 625 and 626," (equivalent to §§ 567 and 568 of the Civil Code of Puerto Rico) 1 Castán: *Derecho Civil Español, Común y Foral* 369 *et seq.* (*Instituto Editorial Reus*, 7th Ed., 1949).

From the second footnote of Castán's gloss we extract the following statement: "although it seems to appear from the Code that the minors may accept simple gifts even without the intervention of their legal representatives, Morell quite properly comments that said rule requires the possibility of application and that, where it is the case of a *child* it will be

necessary that its legal representatives accept the gift in its name, as inferred from §§ 627 and 631" (equivalent to §§ 569 and 573 of the Civil Code of Puerto Rico, referring to gifts made to persons conceived but yet unborn, which gifts may be accepted by the persons who would lawfully represent them if they were already born and to the notice of acceptance that must be made by the person who accepts a gift on behalf on another).

The possibility of application to which Morell refers is not only the possibility of conscience, to know exactly what the act performed is about, but also the physical possibility, for an infant three months old could hardly appear before a notary to accept a gift. The same practical rule could possibly be applied during the whole impuberty stage, that is, women under 12 years of age and men under 14 years of age, applying by analogy rule 2 of § 168 of the Spanish Notarial Regulations, still in force in Puerto Rico.

Fortunately, in the case at bar there is no specific proof of the acceptance by minors per se or through their representative, of the gift intended to be bestowed. Nor is there any evidence of the consent to the assignment, if we concluded that the recording of the stock certificate instead of being a gift, was in reality an assignment of a title-value.

We have affirmed that any gift made from the paternal estate to a minor living with his parents produces the legal anomaly of a gift for the benefit of the donor himself, because § 156 of the Civil Code of Puerto Rico provides that: "The father or mother possesses the ownership and usufruct of whatever property the child may acquire with the capital of each of his parents." Although § 156 refers to property given by the parents to their minor children to be managed by them later, the most reliable texts of the Spanish commentators have connected it with the theory of the Roman Law peculium, establishing the difference between the peculium profectitium and the peculium adventitium: 1 *Oyuelos Digesto* 270, (*Sobrinos de la Sucesión de N. Minuesa de los*

*Ríos*, 1917 ed.), including all the property of the minor children which comes from his father's property making it necessary in such case to investigate the origin of the acquisition, 2 Manresa: *Comentarios al Código Civil Español* 45 (*Instituto Editorial Reus*, 7th ed., 1944). If it is not shown that the property was acquired with the child's own money, it cannot come under the peculium adventitium, and on the contrary, it comes under peculium profectitium, for which reason the father possesses both the ownership and the usufruct.

Relying on Manresa's Commentaries this Court decided the case of *Sánchez et al.* v. *Vadi et al.*, 25 P.R.R. 519, 522, (*Del Toro*) (1917), followed in *González* v. *Registrar*, 38 P.R.R. 765, 766 (*Wolf*) (1928). There being no contrary evidence that said property was acquired with the minor's own money, and it having been proved that it was acquired with the father's money, regardless of the lucrative title, we are forced to conclude that said property belonged to the plaintiff-appellant and his wife on June 29, 1942, and that therefore they could subsequently create a trust on said property in favor of their minor children.

 The second question is the following: Is the trust created in this case valid according to the provisions of our Civil Code? The third question is this: Is the trust created in this case sufficient according to our tax law to establish the separability of income between the property of the constituent and the property of the beneficiaries? We have grouped the two last questions for the purpose of simplifying the method of decision, for the following reasons: (1) Our Trust Law, in force on the date the trust in question was created, is a civil institution derived from the provisions of the Panamanian trust. (2) The Panamanian trust attempted to reconcile the traditional structures of the Civil Law with certain functional aspects of the North American trust. (3) Our Income Tax Act, applicable in this case, was derived from the Revenue Act of 1924 of the U. S. Congress. (4) Although

the tax jurisprudence connected with trusts accepts variations of the state laws, it also applies the equity rules of the Anglosaxon and North American trusts. (5) Although our Trust Law is, to a certain extent, foreign to the classical Puerto Rican Civil Law, when it was incorporated into our Civil Code it was expressly limited to that which was not specifically prohibited by the Civil Code of Puerto Rico, (§ 855). To assume an extremely Civil-Law attitude toward the Puerto Rican trust might tend to sacrifice certain functional aspects of the North American or Anglosaxon trust, which although not corresponding to the best tradition of the Civil Law, are not so repugnant to our civil institutions as to prevent us from enjoying their advantages. To assume an extremely imitative attitude would mean to incorporate into our Civil Law a series of alien concepts which could disrupt the conceptual unity and institutional harmony which distinguishes the Civil Codes. As is always the case, the luminous zone of understanding lies in extreme objectivity.

In the light of these reflections we will now examine the trust deed challenged in this case. The execution clauses are the following:

### FIRST

"Belarmino Álvarez Feito and his wife Laura García, as constituents, have delivered to the other parties appearing herein, Nicolás Vargas García and Ángel Joglar Suárez, as trustees, for the benefit of the aforesaid Belarmino and José Luis Álvarez García, as beneficiaries, and by a trust contract inter-vivos, retroactive to the first of July of nineteen hundred and forty-one, the two stock certificates numbered nine and ten and which appear in the first paragraph of the recital of this deed, of one hundred and fifty shares each of the common stock of the authorized capital of Sobrinos de Villamil, Inc. worth one hundred dollars each common share, the first, number 9 in favor of Belarmino Álvarez García, and the other, number 10 in favor of José Luis who bear the same last names.

### SECOND

"This contract must be considered as an independent and separate trust in favor of each one of the beneficiaries, so that,

even if the total amount should be in conflict with the hereditary rights of the legal portion in favor of the forced heirs, the trust must always remain in force as to the amount not in conflict with the legal portion of such heirs, or void as to the amount impairing the aforesaid legal portion.

### THIRD

"The appearing party, Nicolás Vargas García, shall act as the designated trustee, and the appearing party, Ángel Joglar Suárez, as substitute trustee, and the latter shall act only whenever the designated trustee finds it impossible to act because of absence, incapacity, removal or death. And the trustee acting as such shall receive a monthly compensation of one dollar.

### FOURTH

"In case the alienation of the stock herein held in trust becomes necessary, the proceeds thereof shall be invested by the trustee in charge, in the acquisition of real property or mortgage credits, in favor of each one of the beneficiaries, in the same manner provided in this trust with respect to the aforesaid stock certificates.

### FIFTH

"Likewise, the trustee shall make a like investment of any amount issuing from the trust income of each one of the beneficiaries which has not been withdrawn by them, it being understood that the income of these amounts not withdrawn and thus invested shall benefit each one of the beneficiaries proportionately."

■ 1. As may be seen, the trust involved herein does not specify whether it is revocable or not, but we may consider it irrevocable by express provision of §§ 834 and 849 of the Civil Code of Puerto Rico. In the general principles of the North American trusts a trust is considered irrevocable unless the constituent expressly or impliedly reserves the right to revoke it: 3 Scott *on Trusts* 1813, § 332 (Little, Brown and Company, 1939 ed.). From the point of view of the tax law in the United States, the irrevocable trust is more favored than the revocable or controlled trust. 6 Merten's: *Law of Federal Income Taxation* 409 § 37.01 (Callaghan and Company, 1946 ed.) 166 A.L.R. 1320, *et seq.* (1947), but the

irrevocability is only one of the indications favorable to the separability of the incomes.

2. The trust in question does not specify the purpose for which it was created. In the recital of the public deed creating the trust, the only thing specified is *"that it was the aim* of the appearing party, Belarmino Álvarez Feito, in requesting that the stock certificates be thus issued, to *constitute* with them as constituents, for himself and in the name of his heirs, executors, administrators or successors in interest a *trust in favor of his aforesaid children* Belarmino and José Luis Álvarez García, twelve and nine years of age respectively, students, and residents of Río Piedras, Puerto Rico, as beneficiaries, and to that effect, the parties now appearing, ratify every act and purpose intended towards that aim, and by means of the following clauses they execute . . . Belarmino Álvarez Feito and his wife Laura García, as constituents, have delivered to the other parties appearing herein, Nicólas Vargas García and Ángel Joglar Suárez as trustees, *for the benefit of the aforesaid Belarmino and José Luis Álvarez García,* as beneficiaries, and by a trust contract intervivos, retroactive to the first of July, nineteen hundred and forty-one, the two stocks certificates . . ."

Section 855 of the Civil Code of Puerto Rico provides that the trust may be created for any purpose and upon any terms or conditions not contravening the law or the public morals or not specifically prohibited by this Code. When the purposes for which a trust is created are not specified, the judicial inquiry must be intended to determine whether the trust created may be used for an illegal purpose at any specific time. This is what seems to flow from the Civil Code of Puerto Rico. In the general principles of the North American trust, the situation is identical: 1 Scott *on Trusts* 398, § 63, whether constituted to defraud creditors or to defraud the Government of its income, § 63.1 at p. 400 of the aforecited work. But from the point of view of the federal income tax law, a trust created for the purpose of avoiding

or reducing tax must not be favored, if as a matter of fact, the trust income reverts to the settlor. 113 A.L.R. 458 *et seq.* (1938).

■ 3. This is the case of a trust created by the parents of two *minor* children in their favor. We have found nothing in the trust provisions of our Civil Code which is against that kind of trust, when created in favor of children of legal age or emancipated, or when the gift is made by a third person to minor or adult or emancipated children of another person. As to minor children living with their parents the situation is different. In this latter case, by provision of our Civil Code, we must also inquire whether the trust is created in order that the trustee fulfill certain obligations of the *patria potestas*, which in any event, belong to the father, such as the administration of the property of the minor children living with their parents, obligations which cannot be waived because they come under the Public law. Likewise whether the creation of the trust is equivalent to a waiver of the usufructuary right enjoyed by the parents over the property of the minor children living with them, which right cannot be alienated—2 Manresa: *Comentarios al Código Civil Español* 47, (Instituto Editorial Reus, Sixth ed., 1944)—because it is constituted in order to assist the father in the financial responsibilities attached to the *patria potestas* and is regarded as created rather in favor of the minor child than of the father. The general principles of the North American trust are to the effect that a trust for the support of minor children is not favored since any trust constituted in order to fulfill parental obligations is regarded as constituted for the benefit of the constituent: *Helvering* v. *Stuart*, 317 U. S. 154, 169, 170, 172, 87 L. ed. 154, 163, 164 (*Reed*) (1942), (subsequent cases which seem to be in conflict are the result of the amendment by addition of § 167 of the Federal statute made in 1943, which, of course, is not incorporated in § 20 of our Income Tax Act of 1924). For purposes of the federal in-

come tax law the principle is the same: 158 A.L.R. 1324 (1945).

Although in this case the constituents state that their *intention is to constitute a trust for the benefit of their minor children* what they are making in the reality of law is a gift in favor of two minor children living with them. We have already seen that according to § 156 of our Civil Code, in such a case, the ownership as well as the usufruct belong to the parents, because it is property acquired by the minor children with their parents' capital. In the general principles of the North American trust the majority rule is that an imperfect gift should not be upheld on the ground that a declaration of trust is intended, 1 Scott *on Trusts* 182, § 31 (cited ed.); *Weil* v. *Commissioner of Internal Revenue*, 82 F. 2d 561, 563 (*Sibley*) (1936), 23 A.L.R. 2d 1188 (1952). For purposes of the federal income tax law, the tax liability of the donor would be the same as that of the constituent if the separability of the income of the gift cannot be established: 149 A.L.R. 638 (1944).

■ 4. In this case the trusts are constituted upon two stock certificates. Pursuant to § 837 of the Civil Code, a trust may be constituted upon personal property of any kind, and, pursuant to § 268 of that Code, shares are considered movables (personal property). According to the general principles of the North American trust, a trust upon shares of stock would be equally valid. For the purposes of the Tax Law it would be equally valid. 166 A.L.R. 1310 *et seq.* (1947).

■ As to the delivery and registration of the shares held in trust, § 834 of our Civil Code requires the transfer of the property to a third person but § 849 of that same code dealing with trusts provides that a trust begins at the time when the trustee accepts the mandate and once accepted, the mandate becomes irrevocable. According to the general principles of the North American trust to take possession of the thing held in trust is one of the duties of the trustee: 2 Scott *on Trusts*

931, § 175, and in the case of shares of stock he should see that they are registered in his name, p. 931, *supra*. Where a direct transfer of shares is not made but there is a document sufficient to serve as indorsement, the transfer is rendered valid: 12 Fletcher *Cyclopedia of the Law of Private Corporations* 299 *et seq.* § 5488, Callaghan and Company, 1932 ed., 38 A.L.R. 1366 *et seq.* (1925). For the purposes of the Federal Tax Law the gift or trust is considered valid even if the registration has not been effected: 38 A.L.R. 1366 *et seq.* 1925, *Weil* v. *Commissioner of Internal Revenue*, *supra*, p. 563. Although, in this case, the shares held in trust appear recorded in the name of the minor beneficiaries, it is nonetheless true that pursuant to § 156 of our Civil Code the ownership and usufruct belonged to the father, and since he had delivered said shares to the trustee before a Notary Public, and the deed is a sufficient indorsement in a separate document, the trustee may compel the corporation to transfer said shares to his name.

 5. In the trust created here, the constituents authorized the trustee to invest "any amount issuing from the trust income of each one of the beneficiaries which has not been withdrawn by them." Since the beneficiaries are minors, the practical effect of said clause is that the constituents reserved the right to withdraw themselves any income from the trust. But § 834 authorizes a trust for the benefit of the constituent himself. Therefore, this provision would not be void in a conditional trust, even though the practical effect be that the constituent himself receives the trust income. In the general principles of the North American trust the situation would be the same. For the purposes of the federal tax law, the situation is more complicated.

 Where the beneficiaries have the right to withdraw so much of the income of the trust as is necessary to provide for their care and support, it has been held that in a conditional trust of this kind the trustee has no discretion to resist the delivery of that income and the same is taxable to

the beneficiaries. If the beneficiaries fail to make such demand, the entire income is taxable to the trustee as income held for future distribution: 6 Merten's 339, § 36.57, (cited ed.).

 In order to determine the separability of the constituent's income from the income of the property held in trust, the control that said constituent has reserved on the trust income is one of the elements to be considered in the possibility that, notwithstanding the distribution in the title of the property, its revenue continues to accrue to the same person. The practical philosophy, which always inspires the tax inquiry, is that the legal structures should be considered less and the possible control by the same person more. If the evidence shows that the constituent, while the property is held in trust, has retained the economic control and the management over the trust in such a way that despite the legal structures and the nominal control and management exercised by the trustee, the constituent continues in the economic control of the property and in the enjoyment of the trust income, the trust has not created any separability whatsoever in the income, and the income is taxable to the constituent.

The control in the possession or management of the trust property may be retained in different ways: (1) where the constituent designates himself as trustee; (2) where a member of his own family is appointed beneficiary; (3) where a member of his own family or an employee or a partner is appointed trustee.

The power of the constituent to act as trustee is one of the circumstances unfavorable to the separability of trust income to be taken into consideration in order to determine the taxable liability of the constituent: 166 A.L.R. 1316, but the fact that the constituent is also the trustee, is not sufficient, in itself, to establish the inseparability of the trust income.

The fact that the beneficiary is a member of the constituent's family is another of the unfavorable circumstances to be taken into account in order to determine the taxable liability of the constituent, 166 A.L.R. 1315; *Helvering* v. *Stuart, supra,* p. 169 and 170 U.S. 163 and 164 L. Ed.; *Helvering* v. *Clifford,* 309 U. S. 331, 336 and 84 L. Ed. 788, 792 *(Douglas)* (1940). To use the new term coined by Judge Frank in his dissenting opinion in the case of *Cushman* v. *Commissioner of Internal Revenue,* 153 F. 2d 510, 515 (1946), Cliffordization has lost weight in the tax law—166 A.L.R. 1325—especially in cases of long-term irrevocable trusts in favor of minor children, where there is no conflict with the local law. In the case of Puerto Rico, as we have seen, there is a conflict with the local law, because the separability of property and trust income between parents and minor children living with them is not recognized if the trust property belonged originally to the paternal estate.

The fact that the trustee is a member of the family of the constituent, or his employee or partner, is also regarded as one of the unfavorable circumstances to be considered in order to determine the taxable liability of the constituent: 166 A.L.R. 1320, although that fact alone does not constitute a final and definitive sign of the inseparability of the trust income. In Puerto Rico there would be conflict with the local law where the designation of trustees fell on a married woman, her husband being the constituent, since alienations between husband and wife are forbidden during the marriage and the property transferred into trust is in full ownership.

When the most outstanding aspects in the federal tax law concerning trusts are examined objectively, without previously guiding our conscience to any specific tendency, it is clear that the diversity of its doctrinary contents is regulated in the first place, as to its validity, by the local State law: *Cusham* v. *Commissioner of Internal Revenue,* 153 F. 2d 510, 511 *(Chase)* (1946); *Blair* v. *Commissioner of Internal Revenue,* 300 U. S. 5, 9, 10, 81 L. ed. 465, 469 *(Hughes)*

(1937), and is governed, in the second place, as to its efficacy, for taxing purposes, by the federal law, (in the case of Puerto Rico the Revenue Act of 1924 of the U. S. Congress from which ours was taken), *Helvering* v. *Stuart*, 317 U. S. 154, 161, 162, 87 L. ed. 154, 159 (*Reed*) (1946).

In Puerto Rico, as a question of validity pursuant to our local law, the parents cannot constitute a trust for the benefit of their minor children living with them, because the Civil Code of Puerto Rico does not recognize the separability of property or trust income between minors and their parents, when such property comes from the parents' estate. Although the trust for the benefit of the constituent himself is permitted in Puerto Rico, as is the case of the annuities, the reservative *censo*, the delivery of property by antichresis for the payment of debt claims, the trust for the benefit of a minor child who lives with his parents cannot be considered as a trust for the benefit of the father, since neither the management of the property of such child, nor the alienation of the usufruct constituted thereon, may be waived or alienated as a matter of public law, it not being possible therefore to relieve a parent, by the creation of a trust, from such paternal obligations.

Thus, said trust would have no efficacy for the corresponding tax purposes. Even if the trust in question were valid as a legal structure, we would not feel inclined to declare its efficacy to evade income tax, because any generic trust created in Puerto Rico for the sole purpose of evading the payment of income tax must not be favored, 1 Scott *on Trusts* 440, § 63.1, especially when the structure created permits accrual of the rents to the same person who creates it.

The judgment appealed from will be affirmed.

Mr. Chief Justice Snyder and Mr. Justice Pérez Pimentel concur in the result.